[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-10795

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

WILMER OROBIO PAYAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:22-cr-00038-JB-B-1

_____

Before BRANCH, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Wilmer Orobio Payan appeals his convictions and total sentence for conspiracy to distribute cocaine on board a vessel subject to the jurisdiction of the United States, 46 U.S.C. § 70506(b), and possession with intent to distribute cocaine on board a vessel subject to the jurisdiction of the United States, 46 U.S.C. § 70503. On appeal, Payan makes two arguments. First, he contends that his underlying statutes of conviction, which are part of the Maritime Drug Law Enforcement Act ("MDLEA"), are unconstitutional, both in general and as applied to his conduct, and that the district court lacked jurisdiction over his crimes. Second, he argues that his sentence is substantively unreasonable. After careful review, we affirm.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

Payan is a 55-year-old citizen of Colombia. After his father was murdered in the 1980s, he dropped out of school to support his family but had an "extremely difficult" time finding work. He became a fisherman and a seaman. During the COVID pandemic, Payan was laid off and could not find work. He was approached with an offer to make a fixed sum by transporting drugs from one location to another.

On January 11, 2022, a U.S. Marine Patrol Aircraft located a suspected drug trafficking vessel approximately 50 nautical miles south of Isla de Malpelo, Colombia. A U.S. Coast Guard cutter moved to intercept the vessel. Officers on the cutter suspected the

vessel to be without nationality as it displayed no indicia of nationality.  The cutter launched an intercept craft that observed bales on the vessel consistent with drug contraband.  The vessel displayed no flag, registration documents, registration number, homeport, name, or other painted on markings.  Payan was identified as the master of the vessel and he stated that the vessel did not have a nationality.  According to the government, Payan's vessel qualified as a vessel without nationality under the MDLEA because the master of the vessel—Payan—failed to make a claim of nationality upon the request of an officer of the United States.  *See* 46 U.S.C. § 70502(d)(1)(B).  The Coast Guard recovered approximately 1,315 kilograms of cocaine from the vessel.

A grand jury in Alabama charged Payan and the other individuals on the vessel—Osiber Vente Orobio and Jaminson Valencia Moreno—with conspiracy to distribute cocaine under the MDLEA, in violation of 46 U.S.C. § 70506(b), and possession with intent to distribute cocaine under the MDLEA, in violation of 46 U.S.C. § 70503.

Payan moved to dismiss the indictment for lack of jurisdiction, arguing that the MDLEA was unconstitutional on its face and as applied to him; making similar arguments to those he makes now on appeal.  He later entered a plea of guilty without a written plea agreement.  At the change of plea hearing, the government stated that it could prove that, when the Coast Guard boarded the vessel, the master of the vessel said that the vessel did not claim a nationality, and therefore the vessel was classified as a vessel

without nationality "under [46 U.S.C. §] 70502." It also was prepared to prove that "the vessel was subject to the jurisdiction of the United States [because] it was a vessel without nationality." The court asked Payan if he committed the acts that the government summarized, and Payan stated that he did. The court accepted Payan's guilty plea and denied the motion to dismiss the indictment as moot.[1]

A probation officer prepared a presentence investigation report ("PSI"), detailing Payan's offense conduct, as described above. The PSI also explained that the mandatory minimum term of imprisonment for Payan's convictions was 10 years for each and the maximum term of imprisonment for each was life imprisonment. *See* 46 U.S.C. §§ 70503, 70506(b); 21 U.S.C. § 960(b)(1)(B). However, the PSI noted that Payan was eligible for "safety valve" relief, *see* 18 U.S.C. § 3553(f)(1)–(5), so the district court could impose a sentence without regard to these statutory minimums. Based on his offense level and criminal history, the PSI calculated Payan's guidelines imprisonment range to be 210 to 262 months' imprisonment.

---

[1] Because Payan's constitutional and jurisdictional arguments regarding the MDLEA were not waived in his guilty plea, *see, e.g.*, *United States v. Williams*, 29 F.4th 1306, 1314 (11th Cir. 2022), *Class v. United States*, 583 U.S. 174, 176, 185 (2018), the district court erred in denying his motion as "moot." Yet, as explained below, Payan's challenges fail on the merits, so we affirm on that ground. *See, e.g.*, *United States v. Caraballo*, 595 F.3d 1214, 1222 (11th Cir. 2010) ("[W]e may affirm . . . on any ground supported by the record.").

Before sentencing, Payan argued that he was merely a "courier," so his relative role in the scheme warranted a "minor role" reduction. He also noted that recent amendments to the Sentencing Guidelines—which apply to defendants without any prior criminal history—supported his request for a reduced sentence. He expressed regret for his conduct and explained that his crime was an aberrancy in an otherwise law-abiding life. He also explained that he would be deported and banned from the United States after completing his sentence, justifying a variance under the 18 U.S.C. § 3553(a) factors. Moreover, he noted that he would be ineligible for many sentence reduction programs while incarcerated because he is not a citizen.

At sentencing, the court overruled Payan's request for a minor role reduction, adopted the PSI's guidelines calculations, and heard the parties' arguments about what an appropriate sentence would be under 18 U.S.C. § 3553(a). Payan reiterated his limited role in the scheme and explained that he was offered the equivalent of $30,000 to participate in the conspiracy. He stated that he "had no idea that he would end up in this situation" or in the United States at all. He also noted that he was the only source of income for his children and that his primary regret was that he could now no longer provide for them because he would be imprisoned. Accordingly, he requested leniency.

Payan personally addressed the court, asking for forgiveness and apologizing for his wrongdoing. He explained that he accepted responsibility for his "huge mistake," and he felt "extremely

remorseful."    "And because of this" mistake, he explained, he would be "far from [his] family, from [his] children, which are [what he] most adore[s] in this life."  In closing, he reiterated that he is the only support for his children and acknowledged that "one has to pay for what one does."

The government asked for a guidelines sentence, arguing that the basis for Payan's conduct was "greed," rather than poverty, and it urged the court to consider the plight of drug users who are harmed by drug trafficking, who are also frequently "impoverished [and] have life struggles."

The court then announced its sentencing decision.  It first noted, as an aggravating factor, that 1,315 kilograms of cocaine "is a significant amount."  Second, it ruled that Payan would receive the benefit of the safety valve and a variance under that provision. It specifically noted, in mitigation, that Payan had been honest with the government about this conduct.  Moreover, even though it disagreed with Payan's minor role reduction argument, the court noted that the facts suggested that his role was not very aggravating, so it would vary lower on that basis as well.  Third, the district court noted that it would sentence Payan at the same level as his codefendants, which would "ensure consistency . . . with the circumstances of this case and [the] circumstances" of the three other defendants.  Thus, it rejected the government's request for a guidelines sentence and sentenced Payan to 135 months' imprisonment, to be followed by five years of supervised release.  The court added that its sentence would have been the same "irrespective of its

23-10795              Opinion of the Court              7

ruling on the mitigating role" argument Payan made. *See United States v. Keene*, 470 F.3d 1347, 1348–49 (11th Cir. 2006). Payan appealed.

## II. STANDARDS OF REVIEW

We generally review constitutional, jurisdictional, and statutory interpretation questions *de novo*. *United States v. Alfonso*, 104 F.4th 815, 820 (11th Cir. 2024), *cert. denied*, 2025 WL 1426696 (May 19, 2025) (mem.), *and cert. denied*, 2025 WL 1426697 (May 19, 2025) (mem.); *United States v. Gruezo*, 66 F.4th 1284, 1290 (11th Cir. 2023). For jurisdictional issues, this is true even when an argument is raised for the first time on appeal. *United States v. Iguaran*, 821 F.3d 1335, 1336 (11th Cir. 2016). Parties may not stipulate to jurisdiction, but they may stipulate to facts that bear on whether a federal court has jurisdiction. *Id.*; *Gruezo*, 66 F.4th at 1290. We review the district court's fact-finding, even that goes to jurisdiction, for clear error. *Iguaran*, 821 F.3d at 1336; *Gruezo*, 66 F.4th at 1290.

"We review the substantive reasonableness of a sentence for an abuse of discretion." *United States v. Butler*, 39 F.4th 1349, 1354–55 (11th Cir. 2022). "In reviewing the reasonableness of a sentence, we will not substitute our own judgment for that of the sentencing court and we will affirm a sentence so long as the court's decision was 'in the ballpark of permissible outcomes.'" *Id.* at 1355 (quoting *United States v. Rosales-Bruno*, 789 F.3d 1249, 1257 (11th Cir. 2015) (opinion of E. Carnes, J.)). A party challenging a sentence as unreasonable bears "the burden of establishing the sentence is unreasonable in light of the record and the [18 U.S.C.] § 3553(a) factors."

*United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). "[W]e have identified three ways in which a district court can abuse its discretion" and "impos[e] a substantively unreasonable sentence: (1) failing to properly consider a relevant sentencing factor that was due significant weight, (2) giving significant weight to a factor that was not relevant, or (3) committing a clear error of judgment by weighing the sentencing factors unreasonably." *Butler*, 39 F.4th at 1356; *see also United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*).

## III. DISCUSSION

### A. The district court properly exercised jurisdiction over Payan's offenses, and our precedent forecloses his constitutional arguments.

Payan first contends that the MDLEA is unconstitutional because it exceeds Congress's authority to define and punish felonies under the high seas. He also argues the MDLEA is unconstitutional as applied to drug trafficking offenses that lack a nexus to the United States. He recognizes, at least in part, that these arguments are foreclosed by prior published precedent of this Court, and he simply raises them for further review. Given our precedent, which Payan concedes is binding, we reject his arguments.

The MDLEA makes it a crime to "knowingly or intentionally . . . possess with intent to manufacture or distribute, a controlled substance" on board "a [covered] vessel subject to the jurisdiction of the United States," and to attempt or conspire to do the same. 46 U.S.C. §§ 70503(a)(1), (e)(1), 70506(b). The statute

defines a "vessel subject to the jurisdiction of the United States" as including "a vessel without nationality." *Id.* § 70502(c)(1)(A). A "vessel without nationality" is defined to include "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality . . . ." *Id.* § 70502(d)(1)(C). The MDLEA "applies even though the act is committed outside the territorial jurisdiction of the United States." *Id.* § 70503(b); *see also Alfonso*, 104 F.4th at 820.

"Article I, Section 8, Clause 10 of the Constitution bestows on Congress 'three distinct grants of power: (1) the power to define and punish piracies, (the Piracies Clause); (2) the power to define and punish felonies committed on the high Seas, (the Felonies Clause); and (3) the power to define and punish offenses against the law of nations (the Offences Clause).'" *Alfonso*, 104 F.4th at 820 (11th Cir. 2024) (quoting *United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1248 (11th Cir. 2012)); *see also* U.S. CONST. art. I, § 8, cl. 10. "We repeatedly have upheld the MDLEA as a valid exercise of Congress's power 'to define and punish . . . Felonies on the high Seas.'" *Alfonso*, 104 F.4th at 820 (quoting *United States v. Estupinan*, 453 F.3d 1336, 1338–39 (11th Cir. 2006)); *see also United States v. Hernandez*, 864 F.3d 1292, 1303 (11th Cir. 2017) ("[W]e [have] held that the MDLEA [i]s a constitutional exercise of Congressional authority under the Felonies Clause, and that the conduct proscribed by the MDLEA need not have a nexus to the United States. (citing *United States v. Campbell*, 743 F.3d 802, 809–10 (11th Cir. 2017) and *United States v. Wilchombe*, 838 F.3d 1179, 1186 (11th Cir. 2016))); *United*

*States v. Cabezas-Montano*, 949 F.3d 567, 587 (11th Cir. 2020) (rejecting an as-applied constitutional challenge to the application of the MDLEA to vessels on the high seas engaged in drug-trafficking crimes without a nexus to the United States).

In *Alfonso*, the defendants appealed their convictions under the MDLEA that arose from an incident where the United States Coast Guard seized a vessel bearing no indicia of nationality from within the Dominican Republic's "Exclusive Economic Zone" ("EEZ").[2] 104 F.4th at 818–20. The defendants argued that the district court lacked subject matter jurisdiction because the EEZ was not part of the "high seas." *Id.* We held that "international law does not limit the Felonies Clause." *Id.* at 826. We also held that a nation's EEZ is "part of the 'high seas' for purposes of the Felonies Clause in Article I of the Constitution," and thus, "enforcement of the MDLEA in EEZs is proper." *Id.* at 823, 827.

We subsequently reaffirmed and built on our holding in *Alfonso* in *United States v. Canario-Vilomar*. 128 F.4th 1374, 1381 (11th Cir. 2025) ("[W]e reject [the] contention that Congress was constrained by international law in crafting its definition of a stateless vessel or in defining the boundaries of the high seas."). Specifically, we explained that Congress's definition of "a vessel without nationality" in the MDLEA—which includes "vessels for which a claimed nation can neither confirm nor deny registration"—was not *ultra*

---

[2] "[T]he EEZ" constitutes "the waters extending 200 nautical miles seaward of and adjacent to the territorial sea of a nation." *Alfonso*, 104 F.4th at 818; *see also id.* at 821; *United States v. Rioseco*, 845 F.2d 299, 300 n.1 (11th Cir. 1988).

*vires* because Congress was not bound by international law in defining what is a "stateless vessel." *Id.* at 1381.

We conclude that the precedent we have summarized forecloses Payan's contentions about the constitutionality of the MDLEA, both facially and as applied. First, we have rejected Payan's argument that the definition of "vessel without nationality" in § 70502(d)(1)(C) exceeds the definition of a stateless vessel under international law. *Canario-Vilomar*, 128 F.4th at 1381. That is because, as we have explained, Congress was not constrained by international law when crafting the MDLEA. *Id.*; *Alfonso*, 104 F.4th at 826. Second, we have also rejected arguments that a conviction under the MDLEA is unconstitutional because the offense lacked a nexus to the United States. *See Campbell*, 743 F.3d at 809–10; *Cabezas-Montano*, 949 F.3d at 587; *Canario-Vilomar*, 128 F.4th at 1381; *Hernandez*, 864 F.3d at 1303; *Wilchombe*, 838 F.3d at 1186.

These prior published opinions bind us, as they have not been overturned or abrogated by this Court sitting *en banc* or by the Supreme Court. *See United States v. Dubois*, 139 F.4th 887, 892 (11th Cir. 2025) ("[A] prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*." (quoting *In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015))).

In addition, to the extent that Payan challenges the district court's jurisdiction, we conclude that the facts which he admitted to in his guilty plea support the district court's conclusion that his vessel was stateless within the meaning of § 70502(d)(1)(B).

*Iguaran*, 821 F.3d at 1336; *Gruezo*, 66 F.4th at 1290; 42 U.S.C. §§ 70502(c)(1)(A), (d)(1)(B), 70503(e)(1).   Accordingly, the court properly exercised jurisdiction.

> B.  *Payan has not shown that his sentence is substantively unreasonable.*

Payan's second main argument is that the district court focused too much on the drug amount involved in his offense and failed to consider other, more mitigating facts such as his dire poverty, his honesty with law enforcement, and his limited role "as a mere drug mule."  He notes that "most all MDLEA cases involve large drug amounts," so the district court's focus on that issue was misplaced.  He asserts that his sentence should reflect the differences between his conduct and the conduct of "drug cartel leaders" who are more culpable than him, and the sentence he received failed to do so.

Under § 3553(a), a sentencing court must impose a sentence that is "sufficient, but not greater than necessary . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense, . . . to afford adequate deterrence," and "to protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(2).  The court also must consider, among other factors, "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  *Id.* § 3553(a)(1), (6).

While advisory, the Sentencing Guidelines are the starting point that a sentencing court must consider. *See Gall v. United States*, 552 U.S. 38, 49 (2007). Given their important role, "we ordinarily expect sentences within the advisory guidelines range to be reasonable." *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009). A sentence "well below the statutory maximum" is another indicator of reasonableness. *United States v. Riley*, 995 F.3d 1272, 1278 (11th Cir. 2021) (quoting *United States v. Stanley*, 739 F.3d 633, 656 (11th Cir. 2014)).

Though the district court must consider all relevant § 3553(a) factors, "the weight given to each factor is committed to the sound discretion of the district court," and it may attach great weight to one factor over the others. *Butler*, 39 F.4th at 1355. A court's "failure to discuss . . . 'mitigating' evidence" does not indicate that the court "erroneously 'ignored' or failed to consider th[e] evidence in determining [the defendant's] sentence." *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007). "Rather, a district court's acknowledgment that it has considered the § 3553(a) factors and the parties' arguments is sufficient." *Butler*, 39 F.4th at 1355 (citing *United States v. Sarras*, 575 F.3d 1191, 1219 (11th Cir. 2009)).

After careful review of the record and the sentencing transcript, we conclude Payan has not shown that the district court reached an unreasonable sentence. The court did not ignore the mitigating facts in the record, *Amedeo*, 487 F.3d at 833; instead, it discussed many of the mitigating factors Payan presented and

weighed them against the aggravating factors—like the drug amount—in reaching its sentence.  It also was not error to put significant weight on the drug amount, as a sentencing court is permitted to attach such weight on appropriate factors it finds important.  *Butler*, 39 F.4th at 1355.

Furthermore, the district court rejected the government's request for a guidelines sentence, sentencing Payan to the same sentence as his codefendants received, reflecting its obligation "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).  In addition, the district court's sentence was a significant downward variance and well below the statutory maximum.  *Sarras*, 575 F.3d at 1220; *Riley*, 995 F.3d at 1278.

In sum, Payan has not borne his "burden of establishing" that his "sentence is unreasonable," *Gonzalez*, 550 F.3d at 1324, in light of the district court's careful consideration of the facts and circumstances and the 18 U.S.C. § 3553(a) factors, *Butler*, 39 F.4th at 1356; *Irey*, 612 F.3d at 1189.  Accordingly, we reject this argument as well.

## IV. CONCLUSION

Payan's first set of arguments are foreclosed by our precedent.  As to his second argument, our review of the substantive reasonableness of a sentence is deferential, and we ask only whether the sentence given was "in the ballpark of permissible outcomes."  *Butler*, 39 F.4th at 1355.  Based on the totality of the circumstances, Payan has not shown that the district court abused its

23-10795               Opinion of the Court                    15

discretion and imposed an unreasonable sentence.  For these reasons, we affirm.

**AFFIRMED.**