[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-13647
Argument Calendar

_____

D.C. Docket No. 4:11-cr-10021-JEM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRISTOPHER PATRICK CAMPBELL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 20, 2014)

Before PRYOR, JORDAN, and FAY, Circuit Judges.

PRYOR, Circuit Judge:

Two changes in law—a statutory change and a decisional change—require

us to reconsider whether the admission of a certification of the Secretary of State to

establish extraterritorial jurisdiction for a prosecution of drug trafficking on the

high seas violates a defendant's right to confront the witnesses against him at trial. U.S. Const. Amend. VI. In *United States v. Rojas*, we held that the admission at trial of a certification to establish jurisdiction over a Panamanian vessel laden with cocaine and seized on the high seas did not violate the Confrontation Clause of the Sixth Amendment. 53 F.3d 1212, 1216 (11th Cir. 1995). After we decided *Rojas*, Congress amended the Maritime Drug Law Enforcement Act to provide that "jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge," and that the "[j]urisdiction of the United States with respect to a vessel subject to this chapter is not an element of an offense." Pub. L. 104-324, § 1138, 110 Stat. 3901, 3988-89, (1996) (codified as amended 46 U.S.C. § 70504(a)). Also after we decided *Rojas*, the Supreme Court overruled its decision in *Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531 (1980), and held that the Confrontation Clause bars the admission of a testimonial statement by "a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54, 124 S. Ct. 1354, 1365 (2004). In the light of these changes in law, we reach the same decision we reached in *Rojas*, but for a different reason. Because the certification proves jurisdiction, as a diplomatic courtesy to a foreign nation, and does not prove an element of a defendant's

2

culpability, we conclude that the pretrial admission of the certification does not violate the Confrontation Clause.

## I. BACKGROUND

On October 26, 2011, the United States Coast Guard observed a vessel in the international waters off the eastern coast of Jamaica. While the Coast Guard was pursuing the vessel, the three individuals aboard the vessel discarded dozens of bales into the water, which the Coast Guard later determined to be approximately 997 kilograms of marijuana. The vessel lacked all indicia of nationality: it displayed no flag, port, or registration number. Glenroy Parchment identified himself as the master of the vessel and claimed the vessel was registered in Haiti. The Coast Guard then contacted the Republic of Haiti to inquire whether the vessel was of Haitian nationality. The government of Haiti responded that it could neither confirm nor deny the registry. The other two individuals aboard the vessel, Christopher Patrick Campbell and Pierre Nadin Alegrand, as well as Parchment later admitted that they knew they were illegally transporting marijuana.

After a federal grand jury indicted Campbell, Alegrand, and Parchment under the Maritime Drug Law Enforcement Act, 46 U.S.C. § 70501 *et seq.*, for conspiracy to possess and for possession with intent to distribute 100 kilograms or more of marijuana, *id.* §§ 70503(a)(1), 70506(a), 70506(b); 21 U.S.C.

3

§ 960(b)(2)(G), Campbell filed a motion to dismiss for lack of jurisdiction on three grounds: (1) that admission of a certification of the Secretary of State to prove a response to a claim of registry, *see* 46 U.S.C. § 70502(d)(2), would violate Campbell's right under the Confrontation Clause and that there was insufficient evidence to prove that Campbell was aboard a vessel subject to the jurisdiction of the United States; (2) that the Act violated Campbell's right to due process of law under the Fifth Amendment because he had no contacts with the United States; and (3) that Congress exceeded its constitutional power to define and punish felonies committed on the high seas when it enacted the Act. Campbell conceded that our precedents foreclosed his last two arguments, but he stated his intent to preserve his objections for further review.

The district court referred the motion to a magistrate judge, who held a hearing about whether the certification of the Secretary of State established jurisdiction. At the hearing, the United States introduced into evidence the certification of the Secretary of State, which included the statement of Commander Daniel Deptula of the United States Coast Guard that he had contacted the Republic of Haiti to inquire whether the vessel was registered there and that Haiti responded that it could neither confirm nor deny the registry of the vessel. Campbell objected to the admission of the certification on the ground that it

4

violated his right under the Confrontation Clause, but the magistrate judge overruled the objection because the certification was "self-authenticating" and "whether there should be further proof beyond the State Department document is really a separate question and does not go to the admissibility of the certification." The magistrate judge issued a report and recommendation that the certification of the Secretary of State established extraterritorial jurisdiction over the vessel and that the Act was constitutional both on its face and as applied to Campbell. The district court adopted the report and recommendation.

Campbell waived his right to a trial by jury in a written statement signed by him, his counsel, the prosecutor, and the district court judge, and at a bench trial, the parties stipulated to the material facts. But Campbell maintained at trial that the stipulation about the communication between Commander Deptula and Haiti proved only the representation by the Coast Guard that a Haitian official could neither confirm nor deny the registration of the vessel and not that the communication from a Haitian official actually occurred. Campbell acknowledged that the district court had already determined its jurisdiction based only on the certification of the Secretary of State, but he argued "that there was nobody from Haiti that actually signed a certificate or provided any documents." The district court found Campbell guilty on both the conspiracy and possession counts.

5

## II. STANDARDS OF REVIEW

We review questions of law *de novo* and findings of fact for clear error. For example, we review "*de novo* a district court's interpretation and application of statutory provisions that go to whether the court has subject matter jurisdiction. . . . The district court's factual findings with respect to jurisdiction, however, are reviewed for clear error." *United States v. Tinoco*, 304 F.3d 1088, 1114 (11th Cir. 2002) (internal quotation marks omitted). "We review *de novo* the legal question of whether a statute is constitutional." *Id.* at 1099. And we review constitutional objections *de novo*. *United States v. Brown*, 364 F.3d 1266, 1268 (11th Cir. 2004).

## III. DISCUSSION

The Constitution empowers Congress "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." U.S. Const. Art. I, § 8, cl. 10. The Supreme Court has interpreted that Clause to contain three distinct grants of power: to define and punish piracies, to define and punish felonies committed on the high seas, and to define and punish offenses against the law of nations. *United States v. Bellaizac–Hurtado*, 700 F.3d 1245, 1248 (11th Cir. 2012). This appeal involves a conviction for an offense defined by an act of Congress under the second grant of power.

6

Congress enacted the Maritime Drug Law Enforcement Act to prohibit any person from "knowingly or intentionally . . . possess[ing] with intent to manufacture or distribute, a controlled substance on board . . . a vessel subject to the jurisdiction of the United States." 46 U.S.C. § 70503(a)(1). In 1996, Congress amended the Act to provide that "[j]urisdiction of the United States with respect to a vessel subject to this chapter is not an element of an offense." 46 U.S.C. § 70504(a). The section continues that "[j]urisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge." *Id.*

The Act declares "a vessel without nationality" as subject to the jurisdiction of the United States and defines a stateless vessel as including "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." *Id.* § 70502(c)(1)(A), (d)(1)(C). Congress made clear that the Act "applies even though the act is committed outside the territorial jurisdiction of the United States." *Id.* § 70503(b). The Act permits several methods for obtaining a response from a foreign nation to a claim of registry and provides that a certification of the Secretary of State is conclusive proof of a response to a claim of registry by a foreign nation: "The response of a foreign nation to a claim

7

of registry under paragraph (1)(A) or (C) may be made by radio, telephone, or similar oral or electronic means, and is proved conclusively by certification of the Secretary of State or the Secretary's designee." *Id.* § 70502(d)(2) (emphasis added). The Act does not require the certification of the Secretary of State to include the details of how an official received or from whom the official received the response to a claim of registry from a foreign nation.

Campbell challenges his convictions on five grounds, four of which attack the constitutionality of the Act. First, Campbell argues that the admission of the certification of the Secretary of State to establish extraterritorial jurisdiction violated his right under the Confrontation Clause. Second, Campbell contends that the pretrial determination of jurisdiction under the Act violated his rights under the Fifth and Sixth Amendments to have a jury determine that issue. Third, Campbell argues that the certification of the Secretary of State provided insufficient evidence for the district court to determine that it had jurisdiction. Fourth, Campbell argues that Congress lacked the power under the Felonies Clause to define his conduct as a criminal offense. Fifth, Campbell argues that his conviction violated his right to due process under the Fifth Amendment because he had no contacts with the United States. These arguments fail.

8

*A. The Confrontation Clause Does Not Bar the Admission of a Certification of the Secretary of State To Establish Extraterritorial Jurisdiction.*

Campbell argues that the admission of the certification of the Secretary of State without the ability to cross-examine a Haitian witness violated his right under the Confrontation Clause, but that argument fails. The Confrontation Clause does not bar the admission of hearsay to make a pretrial determination of jurisdiction when that hearsay does not pertain to an element of the offense. Because the stateless nature of Campbell's vessel was not an element of his offense to be proved at trial, the admission of the certification did not violate his right to confront the witnesses against him.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. Amend. VI. In *Crawford*, the Supreme Court ruled that the Confrontation Clause bars the admission of a testimonial statement by "a witness who did not appear *at trial* unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. at 53–54, 124 S. Ct. at 1365 (emphasis added). The Supreme Court explained that a testimonial statement "is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact," such as an affidavit, custodial examination, or prior testimony at a preliminary hearing. *Id.* at 51, 124 S. Ct. at 1364 (internal

9

quotation marks omitted). But the Supreme Court has never extended the reach of the Confrontation Clause beyond the confines of a trial. *See Bullcoming v. New Mexico*, --- U.S. ---, 131 S. Ct. 2705, 2713 (2011) ("As a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused *at trial* unless the witness who made the statement is unavailable and the accused has had an opportunity to confront that witness." (emphasis added)); *Michigan v. Bryant*, --- U.S. ---, 131 S. Ct. 1143, 1162 (2011) ("[W]hen a court must determine whether the Confrontation Clause bars the admission of a statement *at trial*, it should determine the primary purpose of the interrogation by objectively evaluating the statements and actions of the parties to the encounter, in light of the circumstances in which the interrogation occurs." (emphasis added) (internal quotation marks omitted)); *Pennsylvania v. Ritchie*, 480 U.S. 39, 52, 107 S. Ct. 989, 999 (1987) (opinion of Powell, J.) ("The opinions of this Court show that the right to confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination."); *California v. Green*, 399 U.S. 149, 157, 90 S. Ct. 1930, 1934–35 (1970) ("Our own decisions seem to have recognized at an early date that it is this literal right to 'confront' the witnesses *at the time of trial* that forms the core of the values furthered by the Confrontation Clause." (emphasis added)); *Barber v. Page*, 390

10

U.S. 719, 725, 88 S. Ct. 1318, 1322 (1968) ("The right to confrontation is basically a *trial* right." (emphasis added)).

In *Rojas*, we rejected a challenge, under the Confrontation Clause, to the introduction of a certification of the Secretary of State under the Act, 53 F.3d at 1216, but we decided that issue before Congress made the determination of extraterritorial jurisdiction a pretrial issue of law for the district court and before the Supreme Court decided *Crawford*. Our decision in *Rojas* relied on the pre-*Crawford* standard that permitted the admission of hearsay if it was sufficiently reliable. *Id.; Roberts*, 448 U.S. at 66, 100 S. Ct. at 2539, *abrogated by Crawford*, 541 U.S. at 61–62, 124 S. Ct. at 1370–71. And Congress amended the Act to provide that extraterritorial jurisdiction is "not an element of an offense," but is instead a "preliminary question[] of law to be determined solely by the trial judge." 46 U.S.C. § 70504(a).

Although these changes in law mean that *Rojas* no longer controls this issue, the admission of the certification of the Secretary of State did not violate Campbell's right under the Confrontation Clause. In *United States v. Tinoco*, we held that Congress was entitled to remove the jurisdictional requirement from consideration by the jury because that requirement "does not raise factual questions that traditionally would have been treated as elements of an offense under the

11

common law," such as the actus reus, causation, and the mens rea elements. 304 F.3d at 1108. Instead, the jurisdictional requirement serves as a "diplomatic courtesy to foreign nations and as a matter of international comity." *Id.* Proof of jurisdiction "does not affect the defendant's blameworthiness or culpability, which is based on the defendant's participation in drug trafficking activities, not on the smoothness of international relations between countries." *Id.* at 1109; *see also United States v. Rendon*, 354 F.3d 1320, 1327 (11th Cir. 2003) (reiterating that extraterritorial jurisdiction is not an element of the offense). And, unlike some federal crimes in which the jurisdictional element provides Congress with the authority to proscribe the offense under Article I, the Act makes the determination of jurisdiction a discretionary "statutory hurdle[] to a court's subject matter jurisdiction." *Tinoco*, 304 F.3d at 1104 n.18; *see also id.* at 1110 n.21 (explaining that many federal criminal statutes, such as the Hobbs Act, 18 U.S.C. § 1951(a), and the Travel Act, *id.* § 1952(a), "require[] a particularized, case-by-case factual finding that some product or activity of the defendant relate in some way to interstate commerce"). This jurisdictional requirement "is unique because it is not meant to have any bearing on the individual defendant, but instead is meant to bear only on the diplomatic relations between the United States and foreign governments." *Id.* at 1109. The Confrontation Clause protects a defendant's trial

12

right to confront testimony offered against him to establish his guilt, and the Supreme Court has never extended the reach of the Confrontation Clause beyond the confines of a trial. And, because a pretrial determination of extraterritorial jurisdiction does not implicate the Confrontation Clause, we need not decide whether the certification of the Secretary of State is testimonial in nature. *Cf. United States v. Mitchell–Hunter*, 663 F.3d 45, 52 (1st Cir. 2011) (expressing doubt that a certification of the Secretary of State is testimonial hearsay because "an objective State Department designee would not expect that the certifications would be used at trial, as they are relegated by statute to the pretrial jurisdiction determination"); *United States v. Angulo–Hernández*, 565 F.3d 2, 12 (1st Cir. 2009) (questioning whether a certification of the Secretary of State under the Act is testimonial within the meaning of the Confrontation Clause).

Our analysis aligns with other authorities too. For example, faced with the same issue raised by Campbell, the First Circuit held that, "in this non-trial context, where evidence does not go to guilt or innocence, the Confrontation Clause does not apply." *United States v. Nueci–Peña*, 711 F.3d 191, 199 (1st Cir. 2013) (internal quotation marks omitted); *see also Mitchell–Hunter*, 663 F.3d at 51. And both this Court and other courts have declined to extend the right to confront witnesses to other pre- and post-trial proceedings that do not concern the

13

adjudication of a defendant's guilt or innocence. *See, e.g.*, *United States v. Powell*, 650 F.3d 388, 392–93 (4th Cir. 2011) (holding that the Confrontation Clause does not apply at sentencing and noting that all other federal circuit courts that hear criminal appeals agree); *United States v. Cantellano*, 430 F.3d 1142, 1146 (11th Cir. 2005) (holding that, even after *Crawford*, the confrontation right does not apply at a non-capital sentencing hearing); *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) (holding that the confrontation right does not apply at a pretrial detention hearing because the purpose is to determine whether accused may remain at large, and it "is neither a discovery device for the defense nor a trial on the merits"); *United States v. Andrus*, 775 F.2d 825, 836 (7th Cir. 1985) (holding that the Sixth Amendment does not provide a confrontation right at a preliminary hearing); *LaChappelle v. Moran*, 699 F.2d 560, 564–65 (1st Cir. 1983) (holding that the confrontation right does not apply at an in camera conference to determine the reason a witness refuses to answer a question because such a judicial proceeding "is not a stage of the trial at which an accused must be present"); *United States v. Harris*, 458 F.2d 670, 677–78 (5th Cir. 1972), (holding that the confrontation right does not apply at a preliminary hearing); *see also Wolff v. McDonnell*, 418 U.S. 539, 567–68, 94 S. Ct. 2963, 2980 (1974) ("[Confrontation and cross-examination] are essential in criminal trials where the accused, if found

14

guilty, may be subjected to the most serious deprivations. . . . But they are not rights universally applicable to all hearings[,] . . . and it does not appear that confrontation and cross-examination are generally required in [disciplinary hearings in prisons].”); *cf. United States v. Clark*, 475 F.2d 240, 247 (2d Cir. 1973) (holding that the confrontation right applies at a pretrial suppression hearing because “the suppression hearing centers upon the validity of the search for and seizure of evidence which the government plans to use later in seeking to prove guilt”). We need not decide whether the Confrontation Clause could ever apply to a pretrial determination and conclude only that it does not apply to this pretrial determination of jurisdiction where the certification does not implicate either the guilt or innocence of a defendant charged with an offense under the Act.

### B. The Pretrial Determination of Jurisdiction Does Not Violate the Fifth or Sixth Amendment.

Campbell argues that the Fifth and Sixth Amendments require a jury to determine whether extraterritorial jurisdiction exists, but Campbell’s argument fails for two reasons. First, Campbell waived his right to a jury trial in a signed, written filing. Second, as explained in the preceding section, we have rejected the argument that a jury must determine jurisdiction under the Act. *See Rendon*, 354 F.3d at 1327; *Tinoco*, 304 F.3d at 1109–10. Campbell acknowledges that these precedents foreclose his argument. After all, the Supreme Court long ago held, in a

15

case about a ship seized at sea for carrying contraband (liquor during Prohibition), that a district court could decide before trial the jurisdictional issue about the location of the vessel without submitting that issue to a jury. *Ford v. United States*, 273 U.S. 593, 606, 47 S. Ct. 531, 535 (1927). The Supreme Court explained that the issue of jurisdiction "was necessarily preliminary to th[e] trial" because "[t]he issue whether the ship was seized within the prescribed limit did not affect the question of the defendants' guilt or innocence. It only affected the right of the court to hold their persons for trial." *Id.*

### C. The District Court Did Not Err When It Determined It Had Jurisdiction Based on the Certification of the Secretary of State.

Campbell argues that the district court erred when it determined that extraterritorial jurisdiction existed. He argues that the certification of the Secretary of State lacked details about the communications between the Coast Guard and Haiti and that the United States did not offer any testimony to corroborate the certification. The district court did not err.

Campbell stipulated to the admission of the representations by the Coast Guard in the certification, and the Act provides that the certification is conclusive proof of a response to a claim of registry. The certification contained the statements of Commander Deptula, who explained that he had asked the Haitian government whether the suspect vessel was registered in Haiti and that Haiti

16

responded that it could neither confirm nor deny the registry. The certification

therefore provided conclusive proof that the vessel was within the jurisdiction of

the United States under the Act.

*D. The Act Is a Constitutional Exercise of Congressional Power under the Felonies Clause.*

Campbell argues that Congress exceeded its authority under the Felonies

Clause when it enacted the Act because his drug trafficking offense lacked any

nexus to the United States and because drug trafficking was not a capital offense

during the Founding era, but he acknowledges that his arguments are foreclosed by

our precedents. "[W]e have always upheld extraterritorial convictions under our

drug trafficking laws as an exercise of power under the Felonies Clause." *See*

*Bellaizac–Hurtado*, 700 F.3d at 1257. And we have long upheld the authority of

Congress to "extend[] the criminal jurisdiction of this country to any stateless

vessel in international waters engaged in the distribution of controlled substances."

*United States v. Marino–Garcia*, 679 F.2d 1373, 1383 (11th Cir. 1982). Moreover,

in *United States v. Estupinan*, we rejected an argument "that Congress exceeded its

authority under the Piracies and Felonies Clause in enacting the [Maritime Drug

Law Enforcement Act]." 453 F.3d 1336, 1338 (11th Cir. 2006).

We also have recognized that the conduct proscribed by the Act need not

have a nexus to the United States because universal and protective principles

17

support its extraterritorial reach. *See United States v. Saac*, 632 F.3d 1203, 1209–11 (11th Cir. 2011); *Estupinan*, 453 F.3d at 1338 ("[T]his circuit and other circuits have not embellished the [Act] with the requirement of a nexus between a defendant's criminal conduct and the United States." (internal quotation marks and alterations omitted) (quoting *Rendon*, 354 F.3d at 1325)). The Felonies Clause empowers Congress to punish crimes committed on the high seas. *Saac*, 632 F.3d at 1210. And "inasmuch as the trafficking of narcotics is condemned universally by law-abiding nations, we see no reason to conclude that it is 'fundamentally unfair' for Congress to provide for the punishment of persons apprehended with narcotics on the high seas." *Estupinan*, 453 F.3d at 1339 (internal quotation marks omitted). Congress "may assert extraterritorial jurisdiction over vessels in the high seas that are engaged in conduct that 'has a potentially adverse effect and is generally recognized as a crime by nations that have reasonably developed legal systems.'" *Tinoco*, 304 F.3d at 1108 (quoting *United States v. Gonzalez*, 776 F.2d 931, 939 (11th Cir. 1985)). And "[t]he protective principle does not require that there be proof of an actual or intended effect inside the Unites States." *Gonzalez*, 776 F.2d at 939. Congress also may assert extraterritorial jurisdiction because "the law places *no restrictions* upon a nation's right to subject stateless vessels to its jurisdiction." *United States v. Ibarguen–Mosquera*, 634 F.3d 1370, 1379 (11th Cir.

18

2011) (internal quotation marks omitted). Stateless vessels, such as the one Campbell boarded, are "international pariahs" that have "no internationally recognized right to navigate freely on the high seas." *Marino–Garcia*, 679 F.2d at 1382; *see also United States v. Perlaza*, 439 F.3d 1149, 1161 (9th Cir. 2006) (discussing that for stateless vessels, no proof of nexus is required); *Rendon*, 354 F.3d at 1325 ("Because stateless vessels do not fall within the veil of another sovereign's territorial protection, all nations can treat them as their own territory and subject them to their laws." (internal quotation marks omitted)).

Campbell argues that Congress cannot proscribe drug trafficking on the high seas under the Felonies Clause because only capital crimes were considered felonies at the Founding, but we disagree. Although we have recognized that "there is a dearth of authority interpreting the scope of Congress's power under the [Felonies] Clause," *Saac*, 632 F.3d at 1209, the First Congress understood its power under the Felonies Clause to include proscribing criminal conduct on the high seas that did not warrant capital punishment. In the Crimes Act of 1790, the First Congress made it a crime at sea to "entertain or conceal any such pirate or robber, or receive or take into his custody any ship, vessel, goods or chattels, which have been by any such pirate or robber piratically and feloniously taken" and punished that conduct with "imprison[ment] not exceeding three years," Ch. 9,

19

§ 11, 1 Stat. 112, 114; imposed a three-year maximum sentence, if convicted, for "any seaman or other person [who] commit[s] manslaughter upon the high seas," *id.* § 12, 1 Stat. at 115; and imposed a seven-year maximum sentence for intending to "maim or disfigure" a person "upon the high seas, *id.* § 13.

At the time of the Founding, there was "ambiguity in the meaning of [a] felony." Will Tress, *Unintended Collateral Consequences: Defining Felony in the Early American Republic*, 57 Clev. St. L. Rev. 461, 465 (2009). "At common law, [a felony was] an offense for which conviction result[ed] in forfeiture of the defendant's lands or goods (or both) to the Crown, regardless of whether any capital or other punishment [was] mandated." *Black's Law Dictionary* 651 (8th ed. 2004); *see also* 4 William Blackstone, *Commentaries* *94 (1769) ("Felony, in the general acceptation of our English law, comprize[d] every species of crime, which occasioned at common law the forfeiture of lands or goods."); Giles Jacob, *A New Law Dictionary* (10th ed. 1782) (listing types of punishment for felonies at common law, including death, loss of inheritance, and forfeiture of goods and lands). "By the late seventeenth century, felony had come to mean any very serious crime, especially those punishable by death." Eugene Kontorovich, *The "Define and Punish" Clause and the Limits of Universal Jurisdiction*, 103 Nw. U. L. Rev. 149, 160 (2009) (quoting Blackstone, *supra*, at *94); *see also* Jacob, *supra*

20

("*Felony* is diſtinguiſhed from lighter offences, in that the puniſment of it is death: but not always, for petit larceny is *felony*, . . . yet it is not puniſhed by death, though it be loſs of goods . . . ."). And at the time of the Founding, felony was "a multi-definitional term" with "so many meanings from so many parts of the common law[] and so many statutes . . . that it is impossible to know precisely in what sense we are to understand this word." Tress, *supra*, at 463, 465 (quoting 6 Nathan Dane, Digest of American Law 715 (1823)); *see* 2 Timothy Cunningham, *A New and Complete Law Dictionary* (3d ed. 1783) (explaining that, "by the law at this day," felonies included treason, murder, homicide, burning of houses, burglary, robbery, rape, chance-medley, and petit larceny and that punishments for felonies ranged from death and forfeiture of goods and chattels to terms of imprisonment and hard labor). As James Madison explained, in defense of the power of Congress to define felonies on the high seas, the term "felony" has a "loose signification." *The Federalist No. 42*, at 262 (James Madison) (Clinton Rossiter ed., 1961); *see also United States v. Smith*, 18 U.S. (5 Wheat.) 153, 159 (1820) (acknowledging the "indeterminate" definition of felony under the Felonies Clause). Campbell's argument that only capital crimes were felonies at the time of the Founding fails because the Founding generation would have understood the term to include a broader range of crimes.

21

Campbell cites *United States v. Palmer*, 16 U.S. (3 Wheat.) 610, (1818), to support his argument that Congress may punish only capital offenses under the Felonies Clause, but *Palmer* did not address this issue. In *Palmer*, the Supreme Court upheld a law enacted by Congress under the Piracies and Felonies Clause that prohibited "murder or robbery, or any other offence, which, if committed within the body of a county, would by the laws of the United States, be punishable with death." *Id.* at 626–27. But the Court explained that "punishable with death" served solely to identify which other crimes were included in the statute even though not particularly recited. *Id.* at 628. *Palmer* did not address whether Congress could exercise its power, under the Felonies Clause, to proscribe conduct not punishable by death. Although *Palmer* did not address this issue, we have repeatedly held that Congress has the power, under the Felonies Clause, to proscribe drug trafficking on the high seas. *See, e.g., Estupinan*, 453 F.3d at 1339; *Rendon*, 354 F.3d at 1326.

*E. Campbell's Conviction Did Not Violate His Right to Due Process.*

Campbell argues that his convictions violated his right to due process because his offense of drug trafficking lacked a nexus to the United States, but he concedes that our precedents foreclose this argument too. We held in *Rendon* that the Due Process Clause of the Fifth Amendment does not prohibit the trial and

22

conviction of an alien captured on the high seas while drug trafficking, because the Act provides clear notice that all nations prohibit and condemn drug trafficking aboard stateless vessels on the high seas. 354 F.3d at 1326. And "this [C]ircuit and other circuits have not embellished the [Act] with the requirement of a nexus between a defendant's criminal conduct and the United States." *Estupinan*, 453 F.3d at 1338 (internal quotation marks and alternations omitted). Campbell's conviction did not violate his right to due process under the Fifth Amendment.

## IV. CONCLUSION

We **AFFIRM** Campbell's judgment of convictions.

23