[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11855

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MARTIN ANTHONY TRENCH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20215-DPG-1

_____

_____

No. 23-11869

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

BENJAMIN MARTE SANDOVAL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20215-DPG-2

_____

Before JORDAN, LUCK, and ABUDU, Circuit Judges.

PER CURIAM:

Martin Anthony Trench and Benjamin Marte Sandoval appeal their convictions for conspiracy to possess with intent to distribute cocaine on a vessel subject to United States jurisdiction.

46 U.S.C. §§ 70503(a)(1), 70506(a), (b) & 21 U.S.C. § 960(b)(1)(B). Trench and Sandoval challenge the district court's exercise of jurisdiction over their cases, first arguing that the government lacked authority to prosecute them for a felony committed on the high seas under the Maritime Drug Law Enforcement Act ("MDLEA") because their conduct took place in Colombia's exclusive economic zone ("EEZ"), and EEZs are excluded from the high seas under international law. Trench concedes that we have rejected similar challenges but maintains his position for the purpose of further review. Sandoval also argues that the MDLEA unconstitutionally grants jurisdiction based on a definition of "vessel without nationality" which includes vessels that are not stateless under international law. The government has moved for summary affirmance. After careful review, we grant the government's motion and affirm the convictions.

Summary disposition is appropriate either where time is of the essence, such as "situations where important public policy issues are involved or those where rights delayed are rights denied," or where "the position of one of the parties is clearly right as a matter of law so that there can be no substantial question as to the outcome of the case, or where, as is more frequently the case, the appeal is frivolous." *Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158, 1162 (5th Cir. 1969).[1]

---

[1] All Fifth Circuit decisions issued by the close of business on September 30, 1981, are binding precedent in this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

We generally review constitutional, jurisdictional, and statutory interpretation questions *de novo*. *United States v. Alfonso*, 104 F.4th 815, 820 (11th Cir. 2024), *cert. denied*, 2025 WL 1426696 (May 19, 2025) (mem.), *and cert. denied*, 2025 WL 1426697 (May 19, 2025) (mem.); *United States v. Gruezo*, 66 F.4th 1284, 1290 (11th Cir.), *cert. denied*, 144 S. Ct. 178 (2023) (mem.).

The MDLEA makes it a crime to "knowingly or intentionally . . . possess with intent to manufacture or distribute, a controlled substance" on board "a [covered] vessel subject to the jurisdiction of the United States," and to conspire to do the same. 46 U.S.C. §§ 70503(a)(1), (e)(1), 70506(b). The statute defines a "vessel subject to the jurisdiction of the United States" as including "a vessel without nationality." *Id.* § 70502(c)(1)(A). In turn, a "vessel without nationality" is defined to include "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." *Id.* § 70502(d)(1)(C). The MDLEA "applies even though the act is committed outside the territorial jurisdiction of the United States." *Id.* § 70503(b); *see also Alfonso*, 104 F.4th at 820.

"Article I, Section 8, Clause 10 of the Constitution" gives Congress "'three distinct grants of power: (1) the power to define and punish piracies, (the Piracies Clause); (2) the power to define and punish felonies committed on the high Seas, (the Felonies Clause); and (3) the power to define and punish offenses against the law of nations (the Offences Clause).'" *Alfonso*, 104 F.4th at 820

(quoting *United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1248 (11th Cir. 2012)); *see also* U.S. CONST. art. I, § 8, cl. 10.  "We repeatedly have upheld the MDLEA as a valid exercise of Congress's power 'to define and punish . . . Felonies on the high Seas.'"  *Alfonso*, 104 F.4th at 820 (quoting *United States v. Estupinan*, 453 F.3d 1336, 1338–39 (11th Cir. 2006)); *see also United States v. Hernandez*, 864 F.3d 1292, 1303 (11th Cir. 2017) ("[W]e [have] held that the MDLEA [i]s a constitutional exercise of Congressional authority under the Felonies Clause, and that the conduct proscribed by the MDLEA need not have a nexus to the United States." (citing *United States v. Campbell*, 743 F.3d 802, 809–10 (11th Cir. 2017) and *United States v. Wilchombe*, 838 F.3d 1179, 1186 (11th Cir. 2016))); *United States v. Cabezas-Montano*, 949 F.3d 567, 587 (11th Cir. 2020) (rejecting an as-applied constitutional challenge to the application of the MDLEA to vessels on the high seas engaged in drug-trafficking crimes without a nexus to the United States).

In *Alfonso*, the defendants appealed their convictions under the MDLEA that arose from an incident where the United States Coast Guard seized a vessel bearing no indicia of nationality from within the Dominican Republic's EEZ.[2]  104 F.4th at 818–20.  The defendants argued that the district court lacked subject matter jurisdiction because the EEZ was not part of the "high seas."  *Id.*  We held that "international law does not limit the Felonies Clause."  *Id.*

---

[2] "[T]he EEZ" constitutes "the waters extending 200 nautical miles seaward of and adjacent to the territorial sea of a nation."  *Alfonso*, 104 F.4th at 818; *see also id.* at 821; *United States v. Rioseco*, 845 F.2d 299, 300 n.1 (11th Cir. 1988).

at 826.  We also held that a nation's EEZ is "part of the 'high seas' for purposes of the Felonies Clause in Article I of the Constitution," and thus, "enforcement of the MDLEA in EEZs is proper."  *Id*. at 823, 827.

We reaffirmed and built on this holding in *United States v. Canario-Vilomar*, in which two appellants—one seized in a vessel 37 nautical miles north of Panama, the other seized in a vessel 145 nautical miles north of Colombia—challenged the district court's jurisdiction, arguing that the MDLEA exceeds Congress's authority under the Felonies Clause, and that one appellant's arrest did not occur on the high seas because he was arrested in Colombia's EEZ.  128 F.4th 1374, 1376–78 (11th Cir. 2025).  We relied on *Alfonso* and similarly concluded that Congress was not constrained by international law in crafting the MDLEA.  *Id*. at 1381 ("[W]e reject [appellants'] contention that Congress was constrained by international law in crafting its definition of a stateless vessel or in defining the boundaries of the high seas.").  We rejected the argument "that Congress could not reach [an appellant] merely because he chose to traffic drugs in Colombia's EEZ rather than farther out into the open ocean."  *Id*. at 1382.

Under our prior panel precedent rule, we are bound to follow prior binding precedent until it is overruled by the Supreme Court or this Court sitting *en banc*.  *United States v. White*, 837 F.3d 1225, 1228 (11th Cir. 2016); *United States v. Lee*, 886 F.3d 1161, 1163 n.3 (11th Cir. 2018).

Here, Trench and Sandoval's appeals are foreclosed by the decisions we have summarized.  First, we have rejected challenges to the MDLEA based on the argument that enforcement of the statute is improper as to vessels found in EEZs.  *See Alfonso*, 104 F.4th at 823, 826–27; *Canario-Vilomar*, 128 F.4th at 1381–82.  We must apply those decisions here, as they have not been abrogated or overruled by the Supreme Court or this Court sitting *en banc*.  *See White*, 837 F.3d at 1228; *Lee*, 886 F.3d at 1163 n.3.  Accordingly, "the position of" the government on this point "is clearly right as a matter of law so that there can be no substantial question as to the outcome of the case . . . ."  *Groendyke Transp.*, 406 F.2d at 1162.

Second, as to Sandoval's argument that Congress exceeded its authority by permitting jurisdiction in the MDLEA over vessels that are not considered stateless under international law, the government is also "clearly right as a matter of law."  *Id*.  While the parties dispute whether this exact argument was made in *Canario-Vilomar*, our precedent read together forecloses us from adopting Sandoval's position.  *See Canario-Vilomar*, 128 F.4th at 1381 ("[W]e reject [appellants'] contention that Congress was constrained by international law in crafting its definition of a stateless vessel or in defining the boundaries of the high seas.").  We have explained that "a ship can have only one nationality; if it attempts to claim association with more than one nation for its own convenience, it loses association with any nation and becomes stateless." *United States v. Nunez*, 1 F.4th 976, 987 (11th Cir. 2021).  "Customary international law *does not otherwise define the conditions* under which a nation may conclude that a vessel is stateless or any examination

necessary to reach that conclusion." *Id.* Taken together, *Nunez* and *Canario-Vilomar* foreclose Sandoval's position—international law does not foreclose the MDLEA's definition of statelessness and Congress was not bound by international law in adopting that definition in any event. *Nunez*, 1 F.4th at 987; *Canario-Vilomar*, 128 F.4th at 1381. Accordingly, we cannot adopt Sandoval's position that the MDLEA "is facially unconstitutional because it applies to vessels that are not 'stateless' under customary international law . . . ."

For these reasons, the government's position is clearly correct as a matter of law, so we **GRANT** its motion for summary affirmance. *See Groendyke Transp.*, 406 F.2d at 1162.

**AFFIRMED.**