**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 22-11604

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JUAN DE LEON BERROA,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cr-20359-RNS-1

_____

Before LAGOA, ABUDU, and KIDD, Circuit Judges.

PER CURIAM:

Juan De Leon Berroa appeals his conviction for conspiracy to possess with intent to distribute five kilograms or more of a mixture containing cocaine on a vessel subject to the United States's

jurisdiction under the Maritime Drug Law Enforcement Act ("MDLEA"). On appeal, Berroa first argues that his conviction must be vacated because, although Congress has authority to punish felonies committed on the high seas, his offense did not occur on the high seas, as he was arrested in the exclusive economic zone ("EEZ") of the Dominican Republic, which international law recognizes as distinct from the high seas. Second, Berroa argues that Congress exceeded its authority under the Felonies Clause of Article I, Section 8, Clause 10 of the United States Constitution by enacting 46 U.S.C. § 70502(d)(1)(C) ("subsection (C)"), which defines a "vessel without nationality" to include a vessel in which a master in charge makes a claim of registry, but "the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." Third, Berroa argues that his prosecution violated his due process rights and exceeded Congress's power under the Felonies Clause because his offense bore no connection to the United States, although he admits that we rejected similar arguments, most notably in *United States v. Campbell*, 743 F.3d 802 (11th Cir. 2014), and, thus, maintains his argument merely for the purposes of further review.

## I.

First, Berroa argues that his conviction must be vacated because his offense did not occur on the "high Seas" as that term is defined by international law. Specifically, he argues that EEZs are not part of the high seas, and since he was arrested in the EEZ of the Dominican Republic, his offense fell outside of Congress's limited powers.

When a motion to dismiss the indictment is based on subject matter jurisdictional grounds, we review the district court's denial *de novo*. *United States v. Alfonso*, 104 F.4th 815, 820 (11th Cir. 2024), *cert. denied*, (U.S. May 19, 2025) (No. 24-6177). Likewise, we review "*de novo* a district court's interpretation of a statute and whether a statute is constitutional." *Id.* (citation omitted).

In *Alfonso*, we noted that, despite pleading guilty, the defendants were permitted to "question the Government's power to constitutionally prosecute their offenses." *See id.* at 819 n.5 (quotation marks and citation omitted).

The MDLEA makes it a crime to "knowingly or intentionally . . . possess with intent to manufacture or distribute, a controlled substance" on board "a [covered] vessel subject to the jurisdiction of the United States," and to conspire to do the same. 46 U.S.C. §§ 70503(a)(1), (e)(1), 70506(b). The statute defines a "vessel subject to the jurisdiction of the United States" as including "a vessel without nationality." *Id.* § 70502(c)(1)(A). A "vessel without nationality" is defined to include "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." *Id.* § 70502(d)(1)(C). The MDLEA "applies even though the act is committed outside the territorial jurisdiction of the United States." *Id.* § 70503(b).

Under Article I, Section 8, Clause 10 of the U.S. Constitution, Congress has "three distinct grants of power: (1) the power to

define and punish piracies, (the Piracies Clause); (2) the power to define and punish felonies committed on the high Seas, (the Felonies Clause); and (3) the power to define and punish offenses against the law of nations (the Offences Clause)." *Alfonso*, 104 F.4th at 820 (quotation marks omitted, alteration adopted); U.S. Const. art. I, § 8, cl. 10.

In *Alfonso*, the defendants, who had been seized by the U.S. Coast Guard on a vessel in the Dominican Republic's EEZ, appealed their convictions under the MDLEA and challenged the constitutionality of the MDLEA, as applied to them under the Felonies Clause. 104 F.4th at 818–19. In response to their constitutional challenges, we noted that we "repeatedly have upheld the MDLEA as a valid exercise of Congress's power to define and punish . . . Felonies on the high Seas." *Id.* at 820 (quotation marks omitted, ellipses in original). We have also held that "the Felonies Clause is not limited by customary international law." *Id.* at 826. We further held, as a matter of first impression, that a nation's EEZ is "part of the 'high seas' for purposes of the Felonies Clause in Article I of the Constitution," and thus, "enforcement of the MDLEA in EEZs is proper." *Id.* at 823, 827.

We recently affirmed this holding in *Canario-Vilomar*, in which two appellants, one who was seized in a vessel 37 nautical miles north of Panama, the other who was seized in a vessel 145 nautical miles north of Colombia, challenged the district court's jurisdiction, arguing, as relevant here, that the MDLEA exceeds Congress's authority under the Felonies Clause of the Constitution, and

that one appellant's arrest did not occur on the high seas because he was arrested in Colombia's EEZ.  128 F.4th 1374, 1376–78 (11th Cir. 2025).  We relied on *Alfonso* and similarly concluded that Congress was not constrained by international law in crafting the MDLEA.  *Id.* at 1381 ("[W]e reject [appellants'] contention that Congress was constrained by international law in crafting its definition of a stateless vessel or in defining the boundaries of the high seas.").  Again relying on *Alfonso*, we rejected one appellant's argument "that Congress could not reach him merely because he chose to traffic drugs in Colombia's EEZ rather than farther out into the open ocean."  *Id.* at 1382.

"Under our prior-panel-precedent rule, a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this Court sitting *en banc*."  *Id.* at 1381 (quotation marks omitted, alteration adopted).  We have "categorically rejected an overlooked reason or argument exception to the prior-panel precedent rule."  *Id.* (quotation marks omitted).

Berroa's arguments as to this issue are foreclosed by our holdings in *Alfonso* and *Canario-Vilomar* that international law does not limit the Felonies Clause, that EEZs are part of the high seas, and that enforcement of the MDLEA in EEZs is proper.  We thus reject Berroa's argument that his conviction must be vacated because his offense did not occur on the high seas.

**II.**

Next, Berroa argues that his conviction must be vacated because "Congress exceeded its power under the Felonies Clause by defining 'vessel without nationality' to include vessels that are not stateless under international law."

In *Alfonso*, the defendants similarly argued, in relevant part, that Congress exceeded its authority under the Felonies Clause by defining a "vessel without nationality" under § 70502(d)(1)(C) of the MDLEA to include vessels where registry is asserted but cannot be confirmed or denied by the foreign country. *Alfonso*, 104 F.4th at 818–19. Specifically, they contended that, under customary international law, a verbal claim of nationality is prima facie proof of the vessel's nationality, and the MDLEA improperly displaces that proof without any affirmative evidence to the contrary. *Id.* at 828. Ultimately, reviewing for plain error, we concluded that the defendants could not show any error that was plain because "neither this Court nor the Supreme Court has addressed the constitutional challenge they raise." *Id.* at 829.

We affirmed that holding in *Canario-Vilomar*, this time applying *de novo* review, explicitly rejecting the appellants' argument "that the MDLEA's definition of a vessel without nationality—specifically, the inclusion of vessels for which a claimed nation can neither confirm nor deny registration—is ultra vires." *Canario-Vilomar*, 128 F.4th at 1381. Relying on *Alfonso*'s holding that the Felonies Clause is not limited by customary international law, we reasoned that "[i]t follows that international law cannot limit

22-11604                Opinion of the Court                7

Congress's authority to define 'stateless vessel' for purposes of the MDLEA," such that appellants' argument was foreclosed, even though *Alfonso* did not address this precise issue. *Id.* (citing *Alfonso*, 104 F.4th at 826).

In sum, we have already held in *Alfonso* and *Canario-Vilomar* that international law does not limit Congress's authority under the Felonies Clause, so international law cannot limit Congress's authority to define "stateless vessel" for purposes of the MDLEA. Berroa's arguments to the contrary are insufficient to overcome our binding, on-point precedent.

### III.

Finally, Berroa argues that his prosecution exceeded Congress's powers under the Felonies Clause and violated his due-process rights because his offense bore no connection to the United States.

In *Campbell*, the U.S. Coast Guard saw a vessel in international waters near Jamaica and engaged in pursuit. *Campbell*, 743 F.3d at 804. Three individuals aboard the vessel discarded dozens of bales of marijuana into the water. *Id.* The vessel lacked any indicia of nationality, and, while the master of the vessel declared Haitian registration, the Haitian government responded that it could neither confirm nor deny that claim. *Id.* Campbell, one of the members aboard the vessel, was charged under the MDLEA with conspiracy to possess and possession with intent to distribute 100 kilograms or more of marijuana and was found guilty at trial. *Id.* He appealed his conviction, claiming, as relevant, that (1)

Congress exceeded its authority under the Felonies Clause in prohibiting his conduct because his conduct lacked any nexus to the United States, and (2) his conviction violated his due process rights because he had no contacts with the United States. *Id.* at 805–06, 809–10, 812.

As to the former argument, we "recognized that the conduct proscribed by the [MDLEA] need not have a nexus to the United States because universal and protective principles support its extraterritorial reach," noting that "the protective principle does not require that there be proof of an actual or intended effect inside the United States." *Id.* at 809–10 (alteration accepted and citation omitted). As to the latter argument, we held that the Due Process Clause "does not prohibit the trial and conviction of an alien captured on the high seas while drug trafficking, because the [MDLEA] provides clear notice that all nations prohibit and condemn drug trafficking aboard stateless vessels on the high seas." *Id.* at 812. In *Canario-Vilomar*, we cited *Campbell* and reiterated that the defendant's argument that the lack of nexus caused a due process issue was foreclosed by binding precedent. *Canario-Vilomar*, 128 F.4th at 1382–83. Berroa's nexus and due process arguments here are thus directly foreclosed by our prior panel precedent in *Campbell*.

★    ★    ★

Accordingly, for the reasons stated, we affirm Berroa's conviction.

**AFFIRMED.**