**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13312

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ANGEL LUVI-RAMIREZ,
    a.k.a. Angel Luvi,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cr-20185-CMA-2

_____

_____

No. 23-13313

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

2                    Opinion of the Court                    23-13312

*Plaintiff-Appellee,*

*versus*

WILMAR MOSQUERA,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cr-20185-CMA-4

_____

_____

No. 23-13336
Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JOSE HERNANDEZ,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cr-20185-CMA-1

_____

Before JILL PRYOR, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Appellants Angel Luvi-Ramirez, Jose Hernandez, and Wilmar Mosquera pleaded guilty to conspiring to possess with intent to distribute cocaine on a vessel subject to the jurisdiction of the United States. On appeal, they challenge their convictions. The government has moved for summary affirmance. We grant the government's motion.

**I.**

In April 2023, a go-fast vessel bearing no indicia of nationality was spotted in the Caribbean Sea about 125 nautical miles off the coast of the Dominican Republic. There were four people aboard the go-fast vessel, which was loaded with fuel drums and visible packages. The United States Coast Guard, suspecting that the go-fast vessel was involved in drug smuggling, launched a helicopter as well as a boat to track it. When the individuals aboard the go-fast vessel spotted the Coast Guard, they began to throw packages overboard. The Coast Guard helicopter fired warning shots. After seeing that the warning shots were ineffective, the Coast Guard helicopter fired shots to disable the vessel.

When members of the Coast Guard team reached the disabled vessel, they found Hernandez, Luvi-Ramirez, and Mosquera aboard.[1] Hernandez identified himself as the vessel's master and

---

[1] The fourth person aboard the go-fast vessel was Endris Hernandez. Endris pleaded guilty to conspiracy to possess with intent to distribute cocaine on a vessel subject to the jurisdiction of the United States and received a sentence of 66 months' imprisonment. Endris has not appealed his conviction or sentence.

refused to make a claim of nationality for it. Based on his answers, the Coast Guard treated the go-fast vessel as a vessel without nationality. The Coast Guard team recovered some of the bales of cocaine that had been tossed overboard.

A grand jury in the Southern District of Florida returned an indictment charging Hernandez, Luvi-Ramirez, and Mosquera with conspiracy to possess with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States (Count One) and possession with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States (Count Two). The defendants moved to dismiss the indictment. They argued that the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70501–08, was unconstitutional as applied to them. They asserted that the United States lacked the authority to punish them because their conduct occurred in the Dominican Republic's exclusive economic zone and had no nexus to the United States. The district court denied the motion.

After the court denied the joint motion to dismiss, the defendants pleaded guilty to Count One in exchange for the government's dismissal of Count Two. As part of the plea agreement, each defendant admitted that when the Coast Guard team boarded the go-fast vessel, Hernandez identified himself as its master and refused to make a claim of nationality for it. Each defendant also

---

References to "Hernandez" in this opinion refer to Jose Hernandez.

stipulated that because of this response, the United States treated the go-fast vessel as a vessel without nationality that was subject to the jurisdiction of the United States. And each defendant agreed that he was responsible for 250 kilograms of cocaine. The district court ultimately sentenced Luvi-Ramirez to 48 months' imprisonment, Hernandez to 76 months' imprisonment, and Mosquera to 58 months' imprisonment.

Luvi-Ramirez, Hernandez, and Mosquera appeal.

## II.

Summary disposition is appropriate either where time is of the essence, such as "situations where important public policy issues are involved or those where rights delayed are rights denied," or where "the position of one of the parties is clearly right as a matter of law so that there can be no substantial question as to the outcome of the case, or where . . . the appeal is frivolous." *Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158, 1162 (5th Cir. 1969).[2]

We review *de novo* a district court's determination on its subject-matter jurisdiction. *United States v. Canario-Vilomar*, 128 F.4th 1374, 1378 (11th Cir. 2025). "Likewise, we review *de novo* the constitutionality of a criminal statute." *Id.* "Although a guilty plea generally waives a defendant's right to appeal his conviction, it does

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

not waive the right to challenge the constitutionality of the statute underlying the conviction." *Id.*

When a defendant raises a challenge for the first time on appeal, we review for plain error. *See United States v. Alfonso*, 104 F.4th 815, 820 (11th Cir. 2024). To establish plain error, a defendant must show: (1) an error, (2) that is "plain," (3) that "affects substantial rights," and (4) that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Lejarde-Rada*, 319 F.3d 1288, 1290 (11th Cir. 2003) (citation modified).

### III.

The MDLEA makes it a crime to "knowingly or intentionally . . . possess with intent to . . . distribute, a controlled substance" on board "a vessel subject to the jurisdiction of the United States" and to conspire to do the same. 46 U.S.C. §§ 70503(a)(1), (e)(1); 70506(b). The MDLEA's prohibitions apply even when the criminal conduct is "committed outside the territorial jurisdiction of the United States." *Id.* § 70503(b).

As the MDLEA's text shows, its prohibitions apply to vessels "subject to the jurisdiction of the United States." *Id.* § 70503(e)(1). It defines a "vessel subject to the jurisdiction of the United States" to include "a vessel without nationality." *Id.* § 70502(c)(1)(A). And it explains when a boat qualifies as a vessel without nationality. *Id.* § 70502(d). The MDLEA's definition of "vessel without nationality" includes: (1) "a vessel aboard which the master or individual in charge makes a claim of registry that is denied by the nation whose

registry is claimed"; (2) "a vessel aboard which the master or individual in charge fails, on request of an officer of the United States . . . , to make a claim of nationality or registry for that vessel"; (3) "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality"; and (4) "a vessel aboard which no individual, on request of an officer of the United States . . . , claims to be the master or is identified as the individual in charge, and that has no other claim of nationality or registry" under the MDLEA. *Id.* § 70502(d)(1).

On appeal, Luvi-Ramirez, Hernandez, and Mosquera challenge their MDLEA convictions. We begin by addressing the constitutional challenges raised by all three defendants. We then discuss two additional issues raised by Luvi-Ramirez.

The two constitutional challenges raised by all defendants are based, in whole or in part, on the Felonies Clause of the Constitution, which authorizes Congress to punish certain offenses committed on the high seas. *See* U.S. Const. art. I, § 8, cl. 10 (granting Congress the authority "[t]o define and punish Piracies and Felonies committed on the high Seas"). In the first challenge, they argue that the Felonies Clause did not authorize their prosecutions

because the waters where they were arrested are part of the exclusive economic zone of the Dominican Republic.[3] Relying on customary international law, they assert that when waters are part of another nation's exclusive economic zone, they are not part of the high seas and thus the United States lacks jurisdiction to enforce the MDLEA over a vessel located in those waters. In the second challenge, they argue that their prosecutions violated due process and exceeded Congress's power under the Felonies Clause because their offenses had no connection or nexus to the United States.

Both challenges are foreclosed by precedent. First, we have held that other countries' exclusive economic zones are "part of the 'high seas' for purposes of the Felonies Clause" and thus enforcement of the MDLEA in an exclusive economic zone is proper. *Alfonso*, 104 F.4th at 823. In reaching this conclusion, we rejected the argument that "Congress's authority under the Felonies Clause to define and punish felonies committed on the 'high seas' is limited by customary international law." *Id.* at 825.

Second, we have rejected challenges to the MDLEA's application to a vessel on the high seas on the basis that the vessel lacked a sufficient nexus to the United States and thus the prosecution violated principles of due process or was not permitted under the

---

[3] A nation's exclusive economic zone sits beyond its territorial waters but within 200 nautical miles of its coastal baseline. *Alfonso*, 104 F.4th at 821. We have described the concept of an exclusive economic zone as of "relatively modern vintage." *Canario-Vilomar*, 128 F.4th at 1382; *see also Alfonso*, 104 F.4th at 823 (explaining that at the time of the adoption of Article I of the Constitution, the concept of an exclusive economic zone "did not exist").

Felonies Clause. *See United States v. Campbell*, 743 F.3d 802, 809–12 (11th Cir. 2014). "[W]e have long upheld the authority of Congress to extend the criminal jurisdiction of this country to any stateless vessel in international waters engaged in the distribution of controlled substances." *Id.* at 810 (citation modified). We have recognized that the prosecution of a noncitizen "captured on the high seas while drug trafficking" does not offend due process because the MDLEA "provides clear notice that all nations prohibit and condemn drug trafficking aboard stateless vessels on the high seas." *Id.* at 812; *see also Canario-Vilomar*, 128 F.4th at 1382–83 (holding that an identical nexus challenge was foreclosed by precedent).

Our precedent compels us to reject these two constitutional challenges. We remain bound by our earlier decisions, which have not been overturned or undermined to the point of abrogation by the Supreme Court or this Court sitting en banc. *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). As to these two constitutional challenges, we conclude summary affirmance is appropriate because the government's position is clearly correct as a matter of law.

We now turn to the two additional issues Luvi-Ramirez raised. First, he says that § 70502(d)(1)(C)—the MDLEA provision that defines "vessel without nationality" to include a vessel for which the master made a claim of nationality, but the claimed nation did not affirmatively and unequivocally assert that the vessel was of its nationality—is unconstitutional. He argues that the power granted to Congress under the Felonies Clause "is limited

to those felonies which the United States has the right to prosecute under international law." Luvi-Ramirez Appellant's Br. 7. He then asserts that § 70502(d)(1)(C) is unconstitutional because it allows the United States to extend its criminal jurisdiction to vessels that "are not stateless under international law." *Id.* Second, he asserts that there was insufficient evidence to support a finding that the go-fast vessel here qualified as a vessel without nationality under § 70502(d)(1)(C) because there was no evidence that the Dominican Republic "fail[ed] to unequivocally confirm a verbal claim of nationality." *Id.* at 9–10. Luvi-Ramirez raises these two issues for the first time on appeal. He raises both issues in the summary of argument section of his opening brief. But he cites no case law to support his position on either issue and does not discuss either issue in the argument section of his brief.

Assuming that Luvi-Ramirez adequately raised these issues on appeal, we agree with the government that there is no substantial question as to their outcome. Because he raises them for the first time on appeal, we review for plain error. Here, Luvi-Ramirez cannot show any error. Both of his challenges rest on the premise that the United States relied on § 70502(d)(1)(C) to establish that the go-fast vessel was a vessel without nationality and to exercise jurisdiction over it. But the record roundly refutes his position. As Luvi-Ramirez admitted in the factual proffer in his plea agreement, Hernandez admitted to the Coast Guard that he was the master of the vessel and then made no claim of nationality or registry for it. Given these responses, the United States treated the go-fast vessel as a vessel without nationality and exercised jurisdiction over it

pursuant to § 70502(d)(1)(B), not § 70502(d)(1)(C). Luvi-Ramirez makes no argument that § 70502(d)(1)(B) is unconstitutional because it is inconsistent with international law or that there was insufficient evidence to establish that the go-fast vessel was without nationality under this provision.

We **GRANT** the government's motion for summary affirmance.