**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 22-11601

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

WILLI ARIEL MENDEZ,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cr-20579-BB-1

_____

_____

No. 22-11605

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

2                    Opinion of the Court                    22-11601

JOSE FELIX VASQUEZ,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cr-20579-BB-3

_____

_____

No. 22-11633

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ADALBERTO MARMOLEJOS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cr-20579-BB-2

_____

Before JILL PRYOR and LUCK, Circuit Judges, and COVINGTON,* District Judge.

---

* Honorable Virginia Covington, United States District Judge for the Middle District of Florida, sitting by designation.

PER CURIAM:

Appellants Willi Ariel Mendez, Jose Felix Vasquez, and Adalberto Marmolejos pleaded guilty to conspiring to possess with intent to distribute cocaine on a vessel subject to the jurisdiction of the United States. On appeal, they raise constitutional challenges to their convictions. In addition, Marmolejos appeals his 75-month sentence. After careful consideration, we affirm.

**I.**

The criminal charges in this case arise from an incident when the United States Coast Guard spotted a boat, which bore no indicia of nationality, in the Caribbean Sea about 95 nautical miles off the coast of Aruba. The Coast Guard dispatched two of its vessels to investigate further. The two Coast Guard vessels approached the boat, which did not stop. Instead, the boat remained underway while individuals on board threw packages overboard. One Coast Guard vessel recovered the jettisoned packages, which contained 226 kilograms of cocaine. The second Coast Guard vessel followed the boat, which stopped eventually.

When a Coast Guard team boarded the boat, they found three individuals on board: Mendez, Vasquez, and Marmolejos. When the Coast Guard asked about the vessel's nationality, Mendez identified the Dominican Republic. The Coast Guard contacted the Dominican Republic, which could neither confirm nor deny the vessel's nationality. Based on this response, the Coast Guard treated the boat as one without nationality and concluded that it was subject to the jurisdiction of the United States.

A grand jury in the Southern District of Florida returned an indictment charging Mendez, Vasquez, and Marmolejos with conspiracy to possess with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States (Count One) and possession with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States (Count Two). Each defendant entered into a written plea agreement in which he agreed to plead guilty to Count One in exchange for the government's dismissal of Count Two.

After pleading guilty but before sentencing, Mendez, Vasquez, and Marmolejos moved to dismiss the indictment for lack of subject matter jurisdiction. They acknowledged that they had been arrested and charged under the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70501–08. They argued that the MDLEA was unconstitutional on its face and as applied to them. The district court denied the motions to dismiss.

The district court sentenced each defendant to 75 months' imprisonment. Because Marmolejos challenges his sentence as well as his conviction on appeal, we now discuss his sentencing in more detail.

Before Marmolejos's sentencing hearing, a probation officer prepared a presentence investigation report ("PSR"). The PSR included details about the offense based on statements Mendez, Vasquez, and Marmolejos made in post-arrest interviews.

The PSR explained that before his arrest Marmolejos worked as a fisherman in the Dominican Republic. Mendez, who was a taxi driver, was his neighbor. Mendez was approached by a man known as Fermin about a job transporting cocaine from Colombia to the Dominican Republic. Fermin offered Mendez and Marmolejos $60,000 in total to transport the cocaine. Mendez and Marmolejos agreed to take the job.

A few days later, Marmolejos received an initial payment of approximately $350. He then traveled with Mendez to a house in Barahona, Dominican Republic, owned by a man named Ezequiel. At the house, they were introduced to "El Botti," who appeared to be Ezequiel and Fermin's boss and traveled with two armed guards.

From Barahona, Mendez and Marmolejos were taken by boat to a house in La Guajira, Colombia. They traveled there on a 23-foot boat with a single engine; the trip took two to three days. For several weeks, they stayed at the house in La Guajira, which belonged to a man named Fabian.

On the day they were to depart Colombia and bring the drugs to the Dominican Republic, Mendez and Marmolejos met Vasquez for the first time. They reported that Vasquez's family owned the cocaine they were transporting and Vasquez's job was to keep the drugs secure. Vasquez, by contrast, did not say that his family owned the cocaine; instead, he said that a man named Miguel from Colombia recruited him to transport cocaine.

On the evening of their departure, Mendez, Marmolejos, and Vasquez boarded the same boat in which Mendez and Marmolejos had traveled to Colombia. For the journey to the Dominican Republic, the boat had been loaded with gasoline, food, water, a compass, and bales of cocaine. During the trip, Mendez and Marmolejos, but not Vasquez, took shifts driving the boat. About 21 hours into the trip, the three men encountered the Coast Guard. Mendez reported that when they saw the Coast Guard, Vasquez ordered him and Marmolejos to throw the cocaine overboard. Vasquez said that all three men tossed the drugs off the boat.

At Marmolejos's sentencing hearing, the district court calculated his total offense level as 31. Marmolejos sought a two-level reduction to his offense level, arguing that he played a minor role in the offense because his involvement was limited to transporting the drugs. He pointed out that he did not participate in preparing the boat, had no knowledge of the drug operation, did not own the boat or anything on it, did not recruit anyone to join the conspiracy, and did not supervise anyone.

The government opposed Marmolejos's request for a minor-role reduction. It argued that Marmolejos played more than a minor role given the amount of cocaine recovered from the boat.

The district court refused to apply a minor-role reduction. It acknowledged that Marmolejos didn't own the drugs, but it nevertheless found that he played a critical role in the offense by transporting such a large quantity of drugs. The court then calculated Marmolejos's guidelines range as 108 to 135 months'

imprisonment. It determined that a downward variance was appropriate and imposed a sentence of 75 months.

Mendez, Vasquez, and Marmolejos appeal.

## II.

"A district court's subject-matter jurisdiction is a question of law that we review *de novo*." *United States v. Canario-Vilomar*, 128 F.4th 1374, 1378 (11th Cir. 2025). "Likewise, we review *de novo* the constitutionality of a criminal statute." *Id.* "Although a guilty plea generally waives a defendant's right to appeal his conviction, it does not waive the right to challenge the constitutionality of the statute underlying the conviction." *Id.*

We review a district court's denial of a minor-role reduction at sentencing for clear error. *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016). "Clear error review is deferential, and we will not disturb a district court's findings unless we are left with a definite and firm conviction that a mistake has been committed." *Id.* (citation modified). We have explained that a "district court's choice between two permissible views of the evidence as to the defendant's role in the offense will rarely constitute clear error so long as the basis of the trial court's decision is supported by the record and does not involve a misapplication of a rule of law." *Id.* (citation modified).

### III.

We begin by addressing Mendez, Vasquez, and Marmolejos's challenge to their convictions. We then consider Marmolejos's sentencing challenge.

### A.

The MDLEA makes it a crime to "knowingly or intentionally . . . possess with intent to . . . distribute, a controlled substance" on board "a vessel subject to the jurisdiction of the United States," and to conspire to do the same. 46 U.S.C. §§ 70503(a)(1), (e)(1); 70506(b). The MDLEA defines "vessel subject to the jurisdiction of the United States" to include "a vessel without nationality." *Id.* § 70502(c)(1)(A). A "vessel without nationality," in turn, is defined to include "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." *Id.* § 70502(d)(1)(C). The MDLEA's prohibitions apply even when the criminal conduct is "committed outside the territorial jurisdiction of the United States." *Id.* § 70503(b).

The appellants raise three constitutional challenges to their MDLEA convictions. Each challenge is based, in whole or in part, on the Felonies Clause of the Constitution, which authorizes Congress to punish certain offenses committed on the high seas. *See* U.S. Const. art. I, § 8, cl. 10 (granting Congress the authority "[t]o define and punish Piracies and Felonies committed on the high Seas").

22-11601                Opinion of the Court                    9

In their first challenge, the appellants argue that the Felonies Clause did not authorize their prosecutions because the waters where they were arrested are part of the exclusive economic zone of Venezuela.[1] Relying on customary international law, they assert that waters that are part of another nation's exclusive economic zone are not part of the high seas and thus the United States lacks jurisdiction to enforce the MDLEA over a vessel located on those waters.

The appellants' second challenge focuses on the MDLEA's definition of a "vessel without nationality," which includes a vessel for which the vessel's master made a claim of nationality but the claimed nation did not affirmatively and unequivocally verify its nationality. *See* 46 U.S.C. § 70502(d)(1)(C). They argue that the power granted to Congress under the Felonies Clause is subject to customary international law, which does not permit a nation to deem a vessel stateless (and subject to its jurisdiction) when the vessel's master makes a claim of nationality but the claimed nation neither confirms nor denies the vessel's nationality.

In their third challenge, the appellants argue that their prosecutions violated due process and exceeded Congress's power

---

[1] A nation's exclusive economic zone sits just beyond its territorial waters but within 200 nautical miles of the coastal baseline. *United States v. Alfonso*, 104 F.4th 815, 821 (11th Cir. 2024). We have described the concept of an exclusive economic zone as of "relatively modern vintage." *Canario-Vilomar*, 128 F.4th at 1382; *see also Alfonso*, 104 F.4th at 823 (explaining that at the time of the adoption of the Constitution, the concept of an exclusive economic zone "did not exist").

under the Felonies Clause because their offenses had no connection or nexus to the United States.

Each of these challenges is foreclosed by precedent. First, we have held that other countries' exclusive economic zones are "part of the 'high seas' for purposes of the Felonies Clause" and thus "enforcement of the MDLEA in [exclusive economic zones] is proper." *United States v. Alfonso*, 104 F.4th 815, 823, 827 (11th Cir. 2024). In reaching this conclusion, we rejected the same argument the appellants make here: that "Congress's authority under the Felonies Clause to define and punish felonies committed on the 'high seas' is limited by customary international law." *Id.* at 825.

Second, we have held that Congress did not exceed its authority under the Felonies Clause when it defined "vessel without nationality" in the MDLEA to include vessels for which a claimed nation neither confirmed nor denied registration. *See Canario-Vilomar*, 128 F.4th at 1381. We held that "international law cannot limit Congress's authority to define 'stateless vessel' for purposes of the MDLEA." *Id.*

Third, we have rejected a constitutional challenge to the MDLEA when a defendant asserted that his vessel lacked a sufficient nexus to the United States. *See United States v. Campbell*, 743 F.3d 802, 810–12 (11th Cir. 2014). "[W]e have long upheld the authority of Congress to extend the criminal jurisdiction of this country to any stateless vessel in international waters engaged in the distribution of controlled substances." *Id.* (citation modified). We have recognized that the prosecution of a noncitizen "captured

on the high seas while drug trafficking" does not offend due process because the MDLEA "provides clear notice that all nations prohibit and condemn drug trafficking aboard stateless vessels on the high seas." *Id.* at 812; *see also Canario-Vilomar*, 128 F.4th at 1382–83 (holding that nexus challenge was foreclosed by precedent).

As we explained, binding precedent forecloses the constitutional challenges that Mendez, Vasquez, and Marmolejos raise. Our earlier decisions bind us because they have not been overturned or undermined to the point of abrogation by the Supreme Court or this Court sitting en banc. *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). Accordingly, we affirm the defendants' convictions.

**B.**

That leaves us with Marmolejos's challenge to the denial of a minor-role adjustment at sentencing. Under the Sentencing Guidelines, a defendant is entitled to a two-level decrease in his offense level if he was a "minor participant" in the criminal activity. U.S. Sent'g Guidelines Manual § 3B1.2(b). A "minor participant" is someone "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." *Id.* § 3B1.2 cmt. n.5. The decision whether to apply a minor-role adjustment is "based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." *Id.* § 3B1.2 cmt. n.3(C); *see United States v. Rodriguez De Varon*, 175 F.3d 930, 934 (11th Cir. 1999) (en banc) (discussing a district court's discretion in determining the defendant's

role in the offense). The defendant bears the burden of proving by a preponderance of the evidence that he had a minor role. *Rodriguez De Varon*, 175 F.3d at 939.

We have instructed district courts to follow a two-step framework when deciding whether to grant a minor-role adjustment. First, the court considers "the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing." *Id.* at 940. This inquiry focuses on whether the defendant "played a relatively minor role in the conduct for which [he] has already been held accountable—not a minor role in any larger criminal conspiracy." *Id.* at 944. Second, the court evaluates the defendant's "role as compared to that of other participants in [the] relevant conduct." *Id.* at 940.

The commentary to § 3B1.2 guides district courts when evaluating minor-role adjustments. It directs them to consider several factors: "the degree to which the defendant understood the scope and structure of the criminal activity," "the degree to which [he] participated in planning or organizing the criminal activity," "the degree to which [he] exercised decision-making authority," "the nature and extent of [his] participation in the commission of the criminal activity," and "the degree to which [he] stood to benefit from the criminal activity." U.S.S.G. § 3B1.2 cmt. n.3(C).

We conclude that the district court did not clearly err in finding that Marmolejos did not have a minor role.[2] He knowingly participated in a scheme to smuggle a large quantity of cocaine, 226 kilograms, from Colombia to the Dominican Republic. He was to be paid a substantial sum of money, $30,000, for transporting the drugs. Importantly, his role in driving the boat was critical to this scheme. These facts support an inference that Marmolejos's role was not minor. *See Rodriguez De Varon*, 175 F.3d at 946 (holding that district court's finding that defendant who transported a large quantity of drugs did not play a minor role was not clearly erroneous because "her participation was central to the importation scheme").

Marmolejos nevertheless argues that he should have received a minor-role reduction because he was less culpable than others who participated in the conspiracy. He says that Mendez was more culpable because Mendez was the captain of the vessel and introduced Marmolejos to Fermin. And Marmolejos asserts that Vasquez was more culpable because his family owned the drugs and he was responsible for keeping the drugs secure on the trip, while Marmolejos merely drove the boat.

---

[2] The government argues that we should review this issue under a manifest injustice standard because although Marmolejos argued during the sentencing hearing that he was entitled to a minor-role adjustment, he failed to raise the objection again when the court announced his sentence. We need not decide whether Marmolejos was required to object again after the district court announced his sentence. Even assuming he adequately preserved this issue for appellate review, his challenge fails under clear-error review.

After comparing Marmolejos's role to the roles of Mendez and Vasquez, we are not left with a definite and firm conviction that the district court made a mistake in finding that Marmolejos's role was not minor. After all, "it is possible that none [of the participants] are minor . . . participants." *Rodriguez De Varon*, 175 F.3d at 944–45; *see United States v. Valois*, 915 F.3d 717, 732–33 (11th Cir. 2019) (holding that district court did not clearly err in denying a minor-role reduction to defendants found aboard a stateless vessel even though no one aboard the vessel received a role reduction).

Marmolejos further argues that he was entitled to receive a minor-role reduction because his participation was minor when compared to that of other individuals, including Fermin, Ezekiel, El Botti, and Fabian. But the relevant conduct here was limited to smuggling the 226 kilograms that Mendez, Vasquez, and Marmolejos actually transported on the boat, not a larger conspiracy involving other drug trafficking. Given this focus, we cannot say that the district court clearly erred. *See Rodriguez De Varon*, 175 F.3d at 944.

**AFFIRMED.**