**NOT FOR PUBLICATION**

# In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13342

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JEIFRY ANTONIO VASQUEZ,

   a.k.a. Jeifry Vasquez,

*Defendant-Appellant.*

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cr-20163-CMA-2

_____

_____

No. 23-13356

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JESUS ALEXANDER GUERRERO-ROSARIO,
  a.k.a. Jesus Guerrero,

*Defendant-Appellant.*

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cr-20163-CMA-1

_____

Before JILL PRYOR, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

Appellants Jeifry Antonio Vasquez and Jesus Alexander Guerrero-Rosario pleaded guilty to conspiring to possess with intent to distribute cocaine on a vessel subject to the jurisdiction of the United States. On appeal, they challenge their convictions. In addition, Vasquez challenges his 78-month sentence. After careful consideration, we affirm.

**I.**

In March 2023, a boat bearing no indicia of nationality was spotted in the Caribbean Sea about 115 nautical miles off the coast of Aruba. A Coast Guard team approached and boarded the boat. They found two men—Vasquez and Guerrero-Rosario—aboard.

Nicholas Muzo, a member of the Coast Guard team who spoke Spanish, questioned Vasquez and Guerrero-Rosario

individually. He asked each man whether he was the master of the boat, using the Spanish word for "captain." Doc. 53 at 12.[1] Both Vasquez and Guerrero-Rosario denied being the boat's master. Muzo then asked each man if he had "registration documents for the boat for any country" or wanted "to claim any nationality for the boat." *Id.* at 33. Each man answered that he "did not have any documentation and did not want to make a claim of nationality." *Id.* at 14. Based on these answers, the Coast Guard treated the boat as a vessel without nationality. It recovered 941 kilograms of cocaine from the boat.

A grand jury in the Southern District of Florida returned an indictment charging Vasquez and Guerrero-Rosario with conspiracy to possess with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States (Count One) and possession with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States (Count Two).

Vasquez and Guerrero-Rosario moved to dismiss the indictment. They argued that the court lacked jurisdiction over them because the government failed to prove that their boat was a vessel without nationality under the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70501–08. They asserted that Muzo prevented them from making a "verbal claim of nationality or registry" and thus the government could not establish that their boat

---

[1] "Doc." numbers refer to the district court's docket entries.

was a stateless vessel. Doc. 18 at 6. They also argued that the government lacked the authority under the Constitution to punish them because their conduct occurred in Venezuela's exclusive economic zone.

After a hearing at which Muzo testified, the district court denied the motions to dismiss. It found that the government's evidence at the hearing established that the boat qualified as a stateless vessel under the MDLEA. The court also rejected Vasquez and Guerrero-Rosario's constitutional challenge.

After the district court denied the motions to dismiss, Vasquez and Guerrero-Rosario pleaded guilty to Count One in exchange for the government seeking dismissal of Count Two. The district court sentenced each defendant to 78 months' imprisonment. Because Vasquez challenges his sentence on appeal, we discuss in more detail the proceedings related to his sentencing.

Before Vasquez's sentencing hearing, a probation officer prepared a presentence investigation report ("PSR"). Based on the drug quantity involved, the PSR applied a base offense level of 38. After applying a two-level reduction to the offense level under the Sentencing Guidelines' safety-valve provision and a three-level reduction for acceptance of responsibility, *see* U.S Sent'g Guidelines Manual §§ 3E1.1; 5C1.2, the PSR assigned Vasquez a total offense level of 33. The PSR reported that Vasquez was in criminal history category I and that his guidelines range was 135 to 168 months of imprisonment.

At the sentencing hearing, Vasquez objected to the PSR, arguing that he should receive an additional two-level reduction to his offense level because he played a minor role in the offense. *See id.* § 3B1.2(b). He argued that he was simply a courier who transported the narcotics and was following orders from other individuals who told him what to do and where to go.

The government opposed Vasquez's request for a minor-role reduction. It explained that Vasquez was being held accountable only for the drugs that he actually transported. And it asserted that Vasquez played a critical role in transporting the nearly one ton of cocaine found on the boat to its destination, explaining that he and Guerrero-Rosario were equally responsible. The court overruled Vasquez's objection.

The court determined, however, that Vasquez was entitled to a two-level reduction to his offense level because he had no criminal history points. *See id.* § 4C1.1. As a result, the court determined that Vasquez's total offense level was 31 and his guidelines range was 108 to 135 months. It then applied a downward variance and imposed a sentence of 78 months.

Vasquez and Guerrero-Rosario appeal.

## II.

"A district court's subject-matter jurisdiction is a question of law that we review *de novo*." *United States v. Canario-Vilomar*, 128 F.4th 1374, 1378 (11th Cir. 2025). But we review a district court's "factual findings with respect to jurisdiction for clear error." *United States v. Cruickshank*, 837 F.3d 1182, 1187 (11th Cir. 2016).

We "review *de novo* the constitutionality of a criminal statute." *Canario-Vilomar*, 128 F.4th at 1378. But we review for plain error when a defendant raises a constitutional challenge for the first time on appeal. *United States v. Alfonso*, 104 F.4th 815, 820 (11th Cir. 2024). "Although a guilty plea generally waives a defendant's right to appeal his conviction, it does not waive the right to challenge the constitutionality of the statute underlying the conviction." *Canario-Vilomar*, 128 F.4th at 1378.

We review a district court's denial of a minor-role reduction at sentencing for clear error. *Cruickshank*, 837 F.3d at 1192. "Clear error review is deferential, and we will not disturb a district court's findings unless we are left with a definite and firm conviction that a mistake has been committed." *Id.* (citation modified). We have explained that a "district court's choice between two permissible views of the evidence as to the defendant's role in the offense will rarely constitute clear error so long as the basis of the trial court's decision is supported by the record and does not involve a misapplication of a rule of law." *Id.* (citation modified).

### III.

We begin by addressing Vasquez and Guerrero-Rosario's challenges to their convictions. We then consider Vasquez's challenge to his sentence.

### A.

The MDLEA makes it a crime to "knowingly or intentionally . . . possess with intent to . . . distribute[] a controlled substance" on board "a vessel subject to the jurisdiction of the United

States," and to conspire to do the same. 46 U.S.C. §§ 70503(a)(1), (e)(1); 70506(b). The MDLEA defines "vessel subject to the jurisdiction of the United States" to include "a vessel without nationality." *Id.* § 70502(c)(1)(A). The MDLEA's prohibitions apply even when the criminal conduct is "committed outside the territorial jurisdiction of the United States." *Id.* § 70503(b).

On appeal, Vasquez and Guerrero-Rosario challenge their MDLEA convictions on the basis that (1) the record failed to establish that their boat qualified as a vessel without nationality under the MDLEA and thus the district court lacked subject matter jurisdiction and (2) the application of the MDLEA to their conduct violates the Constitution.

In the first challenge, Vasquez and Guerrero-Rosario argue that there was insufficient evidence to support the district court's determination that their boat was a vessel without nationality. We disagree.

The MDLEA sets forth a non-exhaustive list of circumstances when a boat qualifies as a "vessel without nationality." *Id.* § 70502(d); *see United States v. Nunez*, 1 F.4th 976, 984 (11th Cir. 2021). The definition of "vessel without nationality" includes "a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel." 46 U.S.C. § 70502(d)(1)(B). The term also refers to "a vessel aboard which no individual, on request of an officer . . . claims to be the master or is identified as the

individual in charge, and that has no other claim of nationality or registry under" the MDLEA. *Id.* § 70502(d)(1)(D).

The MDLEA also sets forth what is required to make a "claim of nationality or registry." *Id.* § 70502(e). A claim is made only when (1) documents aboard the vessel "evidencing the vessel's nationality as provided in article 5 of the 1958 Convention on the High Seas" are produced, (2) the vessel is "flying its nation's ensign or flag," or (3) the master or individual in charge of the vessel makes "a verbal claim of nationality or registry." *Id.*

Based on the record evidence, the government established that Vasquez and Guerrero-Rosario's boat qualified as a "vessel without nationality" under § 70502(d)(1)(B). Upon questioning by Muzo, Vasquez and Guerrero-Rosario each denied being the captain of the boat. Muzo then afforded each man an opportunity to make a claim of registry or nationality for the boat, but neither did so. On top of that, the boat was flying no flag and had no markings indicating its nationality, and no one aboard produced papers showing the vessel's nationality. Taken together, this record was sufficient to show that the vessel qualified as a vessel without nationality because it was "a vessel aboard which the master or individual in charge fail[ed], on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel." *Id.* § 70502(d)(1)(B).[2]

---

[2] We acknowledge that when Muzo questioned the men, he asked who was the "captain" of the vessel rather than who was the "individual in charge." But

This determination is consistent with our precedent. Previously we have held that a boat qualified as a vessel without nationality under the MDLEA when (1) the boat "flew no flag, carried no registration paperwork, and bore no markings indicating its nationality"; (2) the captain hid among the crew; and (3) when questioned, the crew "made no claims about the boat's nationality or registry." *United States v. De La Cruz*, 443 F.3d 830, 832 (11th Cir. 2006).

Vasquez and Guerrero-Rosario resist this analysis. They say that Muzo's questions were inadequate because he asked each man only about "registration documents" for the boat and never asked whether he wished to assert "a claim of nationality." Guerrero-Rosario's Appellant's Br. 15. But Muzo repeatedly testified that he asked each man both (1) whether he had "registration documents for the boat" and (2) whether he "want[ed] to claim any nationality for the boat." Doc. 53 at 33. And each man answered that he "did not have any documentation and did not want to make a claim of nationality." *Id.* at 14. Given this testimony, together with the other evidence discussed above, the district court properly

---

we have recognized that even when a Coast Guard boarding team "did not also ask who was 'the individual in charge,'" its questions will be sufficient to establish that a vessel was stateless under § 70502(d)(1)(B) if it asked questions about the vessel's nationality to everyone aboard the vessel and thus gave "any individual who possessed the authority to make a claim of registry or nationality for the vessel" an "opportunity to do so at the request of a duly authorized officer." *United States v. Cabezas-Montano*, 949 F.3d 567, 589 n.14 (11th Cir. 2020).

determined that the boat was a vessel without nationality for purposes of the MDLEA and concluded that it had subject matter jurisdiction.

We now turn to Vasquez and Guerrero-Rosario's constitutional challenges. They raise two constitutional challenges. Each challenge is based, in whole or in part, on the Felonies Clause of the Constitution, which authorizes Congress to punish certain offenses committed on the high seas. *See* U.S. Const. art. I, § 8, cl. 10 (granting Congress the authority "[t]o define and punish Piracies and Felonies committed on the high Seas").

In the first challenge, Vasquez and Guerrero-Rosario argue that the Felonies Clause did not authorize their prosecutions because the waters where they were arrested are part of the exclusive economic zone of Venezuela.[3] Relying on customary international law, they assert that when waters are part of another nation's exclusive economic zone, they are not part of the high seas and thus the United States lacks jurisdiction to enforce the MDLEA over a vessel located in those waters.

In the second challenge, Vasquez and Guerrero-Rosario argue for the first time on appeal that their prosecutions violated due

---

[3] A nation's exclusive economic zone sits beyond its territorial waters but within 200 nautical miles of its coastal baseline. *Alfonso*, 104 F.4th at 821. We have described the concept of an exclusive economic zone as of "relatively modern vintage." *Canario-Vilomar*, 128 F.4th at 1382; *see also Alfonso*, 104 F.4th at 823 (explaining that at the time of the adoption of the Constitution, the concept of an exclusive economic zone "did not exist").

process and exceeded Congress's power under the Felonies Clause because their offenses had no connection or nexus to the United States.

Both challenges are foreclosed by precedent. First, we have held that other countries' exclusive economic zones are "part of the 'high seas' for purposes of the Felonies Clause" and thus "enforcement of the MDLEA in [an exclusive economic zone] is proper." *Alfonso*, 104 F.4th at 823, 827. In reaching this conclusion, we rejected the argument that "Congress's authority under the Felonies Clause to define and punish felonies committed on the 'high seas' is limited by customary international law." *Id.* at 825.

Second, we have rejected challenges to the application of the MDLEA to a vessel on the high seas on the basis that the vessel lacked a sufficient nexus to the United States and thus the prosecution violated principles of due process or was not permitted under the Felonies Clause. *See United States v. Campbell*, 743 F.3d 802, 809–12 (11th Cir. 2014). "[W]e have long upheld the authority of Congress to extend the criminal jurisdiction of this country to any stateless vessel in international waters engaged in the distribution of controlled substances." *Id.* at 810 (citation modified). We have recognized that the prosecution of a noncitizen "captured on the high seas while drug trafficking" does not offend due process because the MDLEA "provides clear notice that all nations prohibit and condemn drug trafficking aboard stateless vessels on the high seas." *Id.* at 812; *see also Canario-Vilomar*, 128 F.4th at 1382–83 (holding that an identical nexus challenge was foreclosed by precedent).

Both constitutional challenges here are foreclosed by precedent. Our earlier decisions bind us because they have not been overturned or undermined to the point of abrogation by the Supreme Court or this Court sitting en banc. *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).

**B.**

We now turn to Vasquez's challenge to his sentence. Under the Sentencing Guidelines, a defendant is entitled to a two-level decrease in his offense level if he was a "minor participant" in the criminal activity. U.S.S.G. § 3B1.2(b). A "minor participant" is someone "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." *Id*. § 3B1.2 cmt. n.5. The decision whether to apply a minor-role adjustment is "based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." *Id*. § 3B1.2 cmt. n.3(C); *see also United States v. Rodriguez De Varon*, 175 F.3d 930, 934 (11th Cir. 1999) (en banc) (discussing a district court's discretion in determining a defendant's role in the offense). The defendant bears the burden of proving by a preponderance of the evidence that he had a minor role. *Rodriguez De Varon*, 175 F.3d at 939.

We have instructed district courts to follow a two-step framework when deciding whether to grant a minor-role adjustment. First, the court considers "the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing." *Id*. at 940. This inquiry focuses on whether the defendant

"played a relatively minor role in the conduct for which [he] has already been held accountable—not a minor role in any larger criminal conspiracy." *Id.* at 944. Second, the court evaluates the defendant's "role as compared to that of other participants in [the] relevant conduct." *Id.* at 940.

The commentary to § 3B1.2 also guides district courts when evaluating minor-role adjustments. It directs them to consider several factors: "the degree to which the defendant understood the scope and structure of the criminal activity," "the degree to which [he] participated in planning or organizing the criminal activity," "the degree to which [he] exercised decision-making authority," "the nature and extent of [his] participation in the commission of the criminal activity," and "the degree to which [he] stood to benefit from the criminal activity." U.S.S.G. § 3B1.2 cmt. n.3(C).

We conclude that the district court did not clearly err in finding that Vasquez did not have a minor role. He knowingly participated in a scheme to transport internationally a significant quantity of cocaine, more than 900 kilograms. His role as one of two individuals aboard the vessel was important to this scheme. These facts alone support an inference that Vasquez's role was not minor. *See Rodriguez De Varon*, 175 F.3d at 946 (recognizing that district court had discretion to conclude that individual who transported a large quantity of drugs "was central to the importation scheme").

Vasquez nevertheless argues that he should have received a minor-role reduction because his involvement was limited to transporting the cocaine, and he was less culpable than others who

obtained the drugs, funded the voyage, and determined the launching and docking spots. But given that the relevant conduct here was limited to the transportation of the cocaine aboard the vessel and Vasquez and Guerrero-Rosario played comparable roles in this conduct, we are not left with a definite and firm conviction that the district court committed a mistake in finding that Vasquez's role was not minor. After all, "it is possible that none [of the participants] are minor . . . participants." *Id.* at 944; *see also United States v. Valois*, 915 F.3d 717, 732–33 (11th Cir. 2019) (holding that the district court did not clearly err in denying a minor-role reduction to defendants found aboard a stateless vessel even though no one aboard the vessel received a role reduction).

**AFFIRMED.**