**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 22-13361

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ANGELO MARTINEZ,

*Defendant-Appellant.*

————————————————

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20040-JEM-1

————————————————

————————————————

No. 22-13370

————————————————

UNITED STATES OF AMERICA,

2                    Opinion of the Court                    22-13361

*Plaintiff-Appellee,*

*versus*

ERIC MANUEL SUERO TERRERO,

*Defendant-Appellant.*

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20040-JEM-2
_____

_____

No. 22-13507
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JUSTO MATOS PENA,

*Defendant-Appellant.*

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20040-JEM-3
_____

Before ROSENBAUM, LAGOA, and MARCUS, Circuit Judges.

PER CURIAM:

This consolidated appeal arises from the prosecutions of Angelo Martinez, Eric Manuel Suero Terrero, and Justos Matos Pena under the Maritime Drug Law Enforcement Act ("MDLEA"). Defendants-Appellants argue that the MDLEA is unconstitutional under the Felonies Clause, both on its face and as applied, and that their prosecutions were invalid because their conduct lacked a nexus to the United States. They acknowledge, however, that our binding precedent, including the decision we issued in *United States v. Alfonso*, 104 F.4th 815 (11th Cir. 2024), *cert. denied*, 145 S. Ct. 2706 (2025), forecloses these arguments. So Defendants raise them to preserve further review.

Suero Terrero also argues that recent amendments to the Sentencing Guidelines, effective November 1, 2025, should apply to his case retroactively. Applying our precedent, we conclude that the amendments are substantive and not clarifying, so they do not apply retroactively. And even if they did apply retroactively, they would not change his sentence. Because Defendants' constitutional claims are foreclosed and the court made no reversible error, we affirm in full.

## I.    BACKGROUND

On or about January 18, 2022, a U.S. Customs and Border Protection Marine Patrol Aircraft detected Martinez, Suero Terrero, and Matos Pena in a go-fast vessel about 158 nautical miles southeast of Isla Beata, Dominican Republic. U.S. Coast Guard ships diverted to investigate the area.

The Coast Guard also launched a helicopter to assist. The helicopter's crew spotted Defendants jettisoning packages, six of which the Coast Guard later recovered.

As part of its investigation, the Coast Guard gained control of the go-fast vessel. Once it did so, the Coast Guard Boarding Team boarded the boat and found Defendants. Martinez identified himself as the vessel's master and claimed Colombian nationality for the vessel.

Based on Martinez's representation, the Coast Guard reached out to the Colombian government. But Colombia said that it could neither confirm nor deny the go-fast vessel's registration. Onboard, the Coast Guard Boarding Team recovered about 375 kilograms of cocaine. The Team arrested Defendants and transferred them to the Coast Guard ship.

Thirteen days after the seizure, on January 31, 2022, Defendants were charged by criminal complaint with conspiracy to possess with intent to distribute cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of the MDLEA, 46 U.S.C. §§ 70503(a)(1), 70506(b).

On February 8, 2022, Defendants were charged by indictment with one count of conspiracy to possess with intent to distribute at least five kilograms of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 26 U.S.C. §§ 70503(a)(1), 70506(b), and one count of possessing with intent to distribute at least five kilograms of cocaine on board a

vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70503(a)(1).

Defendants moved jointly to dismiss the indictment. As relevant to this appeal, they brought two constitutional challenges to the MDLEA, a facial challenge and an as-applied challenge.

First, Defendants argued that the MDLEA's definition of "stateless vessel" is unconstitutional because it applies to vessels that do not qualify as stateless under customary international law. And, Defendants continued, customary international law limits Congress's power under the Felonies Clause. So in Defendants' view, the MDLEA violates the limitations that the Felonies Clause imposes on Congress.

Second, they contended that the MDLEA was unconstitutional as applied to them because they were arrested in the Exclusive Economic Zone of the Dominican Republic. And, Defendants asserted, that Zone is not part of the "High Seas" as customary international law defines the term.

The district court denied Defendants' motion to dismiss the indictment. It explained that Eleventh Circuit precedent supports the constitutionality of the MDLEA under the protective principle of international law. That principle, the court continued, "permits a nation to assert jurisdiction over a person whose conduct outside the nation's territory threatens the nation's security or could potentially interfere with the operation of its governmental functions."

The district court cited several of our cases that have affirmed this principle, including *United States v. Gonzalez*, 776 F.2d

931, 939 (11th Cir. 1985); *United States v. Campbell*, 743 F.3d 802, 810 (11th Cir. 2014); *United States v. Rendon*, 354 F.3d 1320, 1325 (11th Cir. 2003) ("Congress, under the 'protective principle' of international law, may assert extraterritorial jurisdiction over vessels in the high seas that are engaged in conduct that has a potentially adverse effect and is generally recognized as a crime by nations that have reasonably developed legal systems.'") (citation modified).

After the district court denied Defendants' motion to dismiss, they pled guilty.

The court held a sentencing hearing for Martinez and Matos Pena together. The court granted downward variances for Matos Pena and Suero Terrero. It sentenced Matos Pena to 144 months of imprisonment as to each count, to be served concurrently, and five years of supervised release. As for Suero Terrero, he said he was hired as a deckhand and did not play a major role in the conspiracy. The court sentenced him to 96 months of imprisonment and two years of supervised release. Finally, the court sentenced Martinez, who was the master of the vessel, to 108 months of imprisonment and two years of supervised release.

Defendants each filed notices of appeal. We consolidated the cases for review.

## II.　STANDARDS OF REVIEW

We review a denial of a motion to dismiss an indictment on constitutional grounds de novo, but we review unpreserved claims for plain error. *Alfonso*, 104 F.4th at 820.

We review the district court's determination of a defendant's role in his offense for clear error. *United States v. Rodriguez De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (en banc), *cert denied*, 528 U.S. 976 (1999). The district court has "considerable discretion" in deciding the fact-intensive question of whether a defendant played a minor role in the offense. *United States v. Boyd*, 291 F.3d 1274, 1277–78 (11th Cir. 2002). We will not disturb a district court's sentencing determination unless we are left with a "definite and firm conviction that a mistake" was made. *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016) (citation modified).

## III.    ANALYSIS

As Defendants acknowledge, our precedent squarely forecloses their constitutional challenges to their indictments. We discuss each challenge in turn.

A. *Congress's Felonies Committed on the High Seas Clause power extends within foreign nations' Exclusive Economic Zones.*

Congress's authority to enact the MDLEA derives from its power under the Felonies Clause of the Constitution "[t]o define and punish . . . Felonies committed on the [H]igh Seas." U.S. Const. art. I, § 8, cl. 10.

The MDLEA makes it a crime to "possess with intent to . . . distribute, a controlled substance," "[w]hile on board a covered vessel," or to conspire to do so. 46 U.S.C. §§ 70503(a) and 70506(b). A "covered vessel" includes "a vessel subject to the jurisdiction of the United States." *Id*. § 70503(e)(1). And a "vessel subject to the juris-

diction of the United States" includes a "vessel without nationality." *Id.* § 70502(c)(1)(A). So we turn to the meaning of a "vessel without nationality." That term includes "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." *Id.* § 70502(d)(1)(C).

Here, then, the go-fast vessel Defendants used qualified as a "vessel without nationality" under the MDLEA because Martinez claimed Colombian registry, but Colombia did not confirm Martinez's claim. And that is so even though the Coast Guard encountered their vessel in the Exclusive Economic Zone ("EEZ") of the Dominican Republic. The EEZ lies "just beyond a nation's territorial waters but within 200 miles of the coastal baseline." *Alfonso*, 104 F.4th at 821.

Defendants argue that the Felonies Clause does not allow Congress to enact legislation that reaches into another country's EEZ because, they say, another country's EEZ is not part of the high seas for purposes of the Felonies Clause. Rather, Defendants assert, customary international law defines "High Seas." For this proposition, Defendants cite *United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1249 (11th Cir. 2012).

But *Bellaizac-Hurtado* doesn't help Defendants. The defendants in *Bellaizac-Hurtado* were apprehended in the territorial waters (not the EEZ) of another country. And they challenged their pros-

ecution under the Offences Clause. We held that "customary international law" limits Congress's power to define and punish conduct under the Offences Clause. *See* 700 F.3d at 1249. And because drug trafficking, like most kinds of private criminal activity, is not a violation of international law, *see id.* at 1254, the Offences Clause does not authorize Congress to prosecute drug trafficking in the territorial waters of other nations, *see id.* at 1258.

But we expressly distinguished between drug trafficking that occurs on the high seas and drug trafficking that occurs in another nation's territorial waters. We explained that "Congress possesses additional constitutional authority to restrict conduct on the high seas" under various other parts of the Constitution, including the Felonies Clause, and "we have always upheld extraterritorial convictions under our drug trafficking laws as an exercise of power under the Felonies Clause." *Id.* at 1257.

Despite our caveat, Defendants seek to expand our holding in *Bellaizac-Hurtado* to attack the constitutionality of MDLEA prosecutions on the high seas. But we have squarely rejected this very challenge before.

In *Alfonso*, we ruled that a nation's EEZ is "part of the 'high seas' for purposes of the Felonies Clause in Article I of the Constitution," so "enforcement of the MDLEA in EEZs is proper." 104 F.4th at 823, 827. We also explained that "international law does not limit the Felonies Clause." *Id.* at 826. We concluded that the district court appropriately denied the defendants' motion to dis-

miss the indictment.  *Id.* at 827; *see also United States v. Canario-Vilomar*, 128 F.4th 1374, 1382 (11th Cir.), *cert. denied*, 146 S. Ct. 269 (2025) (same).

*Alfonso* binds us.  *See In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015) ("[U]nder this Court's prior-panel-precedent rule, 'a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*.'") (citation modified). So we affirm the ruling of the district court here that Defendants' prosecution under the MDLEA as applied to them is constitutional because a nation's EEZ is part of the high seas for purposes of the Felonies Clause.

B.  *International law does not limit Congress's power to assert jurisdiction over high-seas drug trafficking on vessels whose claimed nation of registry does not confirm the claim.*

Binding precedent also forecloses Defendants' second constitutional challenge to their prosecutions.

Defendants assert that the MDLEA is unconstitutional on its face, because its definition of a stateless vessel as subject to the jurisdiction of the United States violates an international law limit on Congress's powers under the Felonies Clause.  We disagree.

To be sure, under international law, as multilateral international treaties that the United States has entered define it, vessels on the high seas are typically subject to the criminal jurisdiction of only their nation of registry.  *See United States v. Marino-Garcia*, 679

F.2d 1373, 1380 (11th Cir. 1982) ("[I]nternational law generally prohibits any country from asserting jurisdiction over foreign vessels on the high seas."). But "[s]tateless vessels . . . are 'international pariahs' that have 'no internationally recognized right to navigate freely on the high seas.'" *Campbell*, 743 F.3d at 810 (quoting *Marino-Garcia*, 679 F.2d at 1382). And "we have long upheld the authority of Congress to 'extend[ ] the criminal jurisdiction of this country to any stateless vessel in international waters engaged in the distribution of controlled substances.'" *Id.* (quoting *Marino-Garcia*, 679 F.2d at 1383).

Here, as we've explained, the go-fast vessel in which Defendants were traveling qualified as a "a vessel without nationality" because Colombia—which Martinez, the master of the vessel, named as the boat's country of registry—declined to confirm that the vessel was registered with it. *See* 46 U.S.C. § 70502(d)(1)(C).

Defendants argue the failure of Colombia's government to confirm the vessel's registration does not make the vessel stateless under international law. But our precedent holds that it does.

We squarely affirmed the constitutionality of this MDLEA provision in *Canario-Vilomar*, 128 F.4th at 1381. There, we held "the MDLEA was a constitutional exercise of Congressional authority under the Felonies Clause. . . It follows that international law cannot limit Congress's authority to define 'stateless vessel' for purposes of the MDLEA." *Id.* (citation modified).

So once again, our prior-panel precedent forecloses Defendants' claim. *See In re Lambrix*, 776 F.3d at 794. And we affirm the district court's ruling denying this constitutional challenge.

C. *Congress's constitutional authority over stateless vessels on the high seas does not require a nexus with the United States.*

For the first time on appeal, Defendants argue that prosecuting them for crimes that have no nexus to the United States violates due process. But we have long held that "an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994) (citation modified).

And in any case, we have repeatedly rejected the argument "that Congress exceeded its authority under the Felonies Clause because [an MDLEA defendant's] conduct lacked any nexus to the United States." *Alfonso*, 104 F.4th at 826 (citing *Campbell*, 743 F.3d at 809–10). As we've explained, "the MDLEA is a valid exercise of Congress's power under the Felonies Clause as applied to drug trafficking crimes without a 'nexus' to the United States." *United States v. Cabezas-Montano*, 949 F.3d 567, 587 (11th Cir 2020). We affirmed these principles again in *Canario-Vilomar*, where we held that challenges to the lack of a nexus requirement are "squarely foreclosed by our binding precedent." *Canario-Vilomar*, 128 F.4th at 1383.

Plus, we agree with the government that drug trafficking on the high seas has a nexus with the United States. Congress has found that "trafficking in controlled substances aboard vessels is a

serious international problem, is universally condemned, and presents a specific threat to the security and societal well-being of the United States." 46 U.S.C. § 70501.

For these reasons, we affirm the ruling of the district court rejecting Defendants' due-process challenge to their prosecutions as lacking a nexus to the United States.

D. *The district court did not clearly err in determining that Suero Terrero was not entitled to a minor-role reduction as a mariner transporting more than 300 kilograms of cocaine.*

Suero Terrero argues that the district court clearly erred in denying him a minor-participant reduction. We are not persuaded.

Whether a defendant qualifies for a minor-participant reduction under the Guidelines presents a finding of fact that we review for clear error only. *Rodriguez De Varon*, 175 F.3d at 934. "Clear error review is deferential." *Cruickshank*, 837 F.3d at 1192. "The district court's 'choice between two permissible views of the evidence' as to the defendant's role in the offense will rarely constitute clear error '[s]o long as the basis of the trial court's decision is supported by the record and does not involve a misapplication of a rule of law.'" *Id.* (quoting *Rodriguez De Varon*, 175 F.3d at 945).

Under the Sentencing Guidelines, a defendant is entitled to a two-level decrease in his offense level if he was a minor participant in the criminal activity. *See* U.S.S.G. § 3B1.2(b) (2025). A minor-participant role reduction applies to a defendant who is "substantially less culpable than the average participant in the criminal

activity" and less culpable than most other participants in the criminal activity "but whose role could not be described as minimal." *Id.* § 3B1.2, cmt. n.3(A), 5.

The defendant bears the burden of establishing by a preponderance of the evidence that he qualifies for a minor-role reduction. *United States v. Alvarez-Coria*, 447 F.3d 1340, 1343 (11th Cir. 2006).

In determining whether to grant a minor-role reduction, a court must apply the analysis set forth in *Rodriguez De Varon*, 175 F.3d at 940–48 (the "*De Varon* factors"). There, we explained that (1) "the district court must measure the defendant's role against the relevant conduct for which [he] has been held accountable," *id.* at 940; and (2) "the district court may also measure the defendant's culpability in comparison to that of other participants in the relevant conduct." *Id.* at 944.

On the first prong, a district court must assess all the facts probative of the defendant's role in the relevant conduct for which he is being held accountable. *Id.* at 941. A defendant must establish that his role was minor as compared to the conduct specifically attributed to him. *Id.*

The second prong directs its focus to the conduct of the other identified participants in the relevant conduct, in comparison to the conduct for which the defendant is being held accountable. *See United States v. Moran*, 778 F.3d 942, 980 (11th Cir. 2015). We've explained that "the district court should look at other participants only to the extent that they (1) are identifiable or discernable from

the evidence, and (2) were involved in the relevant conduct attributed to the defendant." *Id.* So "[t]he conduct of participants in any larger criminal conspiracy is irrelevant." *Id.* (citation modified). When we consider a defendant's conduct in comparison to the conduct of other participants, "a defendant is not automatically entitled to a minor role adjustment merely because [he] was somewhat less culpable than the other discernable participants." *Rodriguez De Varon*, 175 F.3d at 944. Indeed, we've recognized that "[t]he fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants." *Id.*

Our review of the record here does not reflect that the district court clearly erred in finding Suero Terrero was not entitled to a minor-role adjustment. The district court explained that it had reviewed Suero Terrero's sentencing objections, which sought a minor-role adjustment. And during Suero Terrero's sentencing, the court listened while Suero Terrero's counsel detailed Suero Terrero's involvement in the conspiracy in relation to others, including in relation to four other alleged co-conspirators besides his co-defendants. So the record shows that the district court was aware of and considered Suero Terrero's minor-role argument.

Indeed, the court expressed "a lot of sympathy" for Suero Terrero. Still, it concluded that Suero Terrero had not "really shown [the court] that he's entitled to a minor role. He is charged with a specific set of facts and a specific involvement in a specific

conspiracy, and in that conspiracy he's not a minor participant." Even so, though, the court imposed a 96-month sentence, 12 months below the low end of the guideline range and the lowest sentence of the three co-defendants.

On this record, we cannot say that the district court's rejection of a minor-role adjustment was clearly erroneous. Suero Terrero's sentence considered his actual conduct of transporting nearly half a ton of cocaine along an international trafficking route. The amount of drugs involved in a drug-trafficking offense is "a material consideration in assessing a defendant's role in [his] relevant conduct." *Rodriguez De Varon*, 175 F.3d at 943. So the first *De Varon* factor—Suero Terrero's sentence in comparison to the conduct for which he is being held accountable—supports affirmance here.

The second *De Varon* factor, the defendant's conduct in comparison to that of the other participants in the relevant conduct, also supports affirmance here. Suero Terrero was one of three participants involved in trafficking a large amount of drugs in international waters. True, he may have been the "least culpable." *Id.* at 944. But we've explained that fact does not make him "automatically entitled to a minor role adjustment." *Id.* Suero Terrero may not have understood the full scope of the conspiracy or exerted decision-making power, but nothing in the record suggests that Suero Terrero lacked understanding of the nature of his conduct in trafficking the drugs.

The district court also appropriately adjusted Suero Terrero's sentence relative to the other participants in the conduct.

The court gave Suero Terrero the lowest sentence of the three defendants, twelve months below Martinez's sentence. So even though he did not get a minor-participant reduction, his sentence appropriately reflects his role in the conduct relative to other participants in the relevant conduct. Thus, the second *De Varon* factor also counsels affirmance.

We are aware that while this case has been pending on appeal, amendments to the Sentencing Guidelines became effective—including Amendment 833, which affects minor-role determination in drug-trafficking cases. *See* U.S.S.G. App. C, Amend. 833 (eff. Nov. 1, 2025). The guideline inserted new language into U.S.S.G. § 2D1.1(e)(2)(B) expanding the circumstances under which courts should apply the minor-participant reduction under § 3B1.2. The new instruction states that the minor-participant reduction is "generally warranted" for defendants whose primary function is a low-level trafficking role, like a courier, lookout, small-scale distributor. *See* U.S.S.G. § 2D1.1(e)(2)(B).

But generally, in reviewing a district court's application of the Sentencing Guidelines, we apply the version of the Guidelines in effect at the time of the defendant's sentencing. *See United States v. Jerchower*, 631 F.3d 1181, 1184 (11th Cir. 2011). We will consider new amendments on appeal only if they are "clarifying" rather than "substantive." *Id.* at 1184–85. *Jerchower* directs us to evaluate several factors to determine whether guidelines are clarifying or

substantive: (1) whether the amendment alters the text of the Guidelines or alters only the commentary; (2) whether the Commission has described an amendment as clarifying or whether its statements in the amendment commentary reflect a substantive change; (3) whether the Commission has included the amendment in the list of retroactive amendments in U.S.S.G. § 1B1.10(c); and (4) whether the amendment overturns circuit precedent, which could suggest a substantive change, or whether it clarifies a meaning inherent in the original guideline. *Id.* at 1185.

After considering these factors, we conclude that Amendment 833 is substantive. First, it directly alters the text of the Guidelines rather than merely adding commentary. Second, the amendment commentary reflects a substantive change. It explains, for instance, that "[t]he amendment expands the circumstances in which an adjustment under § 3B1.2 is warranted in § 2D1.1 cases." U.S.S.G. App. C, Amend. 833. And the amendment makes the minor- and minimal-participant adjustments applicable in drug-trafficking cases, even if the offense did not involve other participants besides the defendant and even if the defendant was not substantially less culpable than the average participant in the criminal activity. *See id.* Third, the Sentencing Commission did not list Amendment 833 as a retroactive amendment in U.S.S.G. § 1B1.10(c). Fourth, to the extent that the amendment makes the involvement of other participants irrelevant to whether a defendant can receive a role decrease, it abrogates our Circuit precedent, which tells us to consider the defendant's role relative to other participants in his relevant conduct.

Because Amendment 833 is substantive, it is not retroactively applicable.  So we do not consider it in our analysis.

## IV.   CONCLUSION

For the reasons we've explained above, we affirm the district court's ruling in all respects.

**AFFIRMED.**